## BEM *et al.* v. BEM *et al.*

1. When refusal to suppress a deposition is assigned as error, the record must show the existence of the facts upon which the motion was based. It cannot be assumed that the facts existed because they were stated in the notice as the grounds upon which the motion would be made.

2. Under Section 5289, Comp. Laws, in relation to taking depositions, providing that "the notice shall be served so as to allow the adverse party sufficient time by the usual route of travel to attend, and one day for preparation, exclusive of Sundays and the day of service," the adverse party is entitled to an extra day for preparation beyond the time required to reach the place where the deposition is to be taken.

3. Where, however, the notice is short, in not allowing the one day for preparation, and both parties appear, and the notifying party then and there offers to postpone the examination, so as to afford the adverse party the day for preparation, failure to accept such offer without any explanation or reason therefor, and participating in the examination without further objection, answers any presumption of prejudice to the adverse party, and error without prejudice is no ground for reversal.

4. Errors assigned upon the ruling of the trial court upon objections to interrogations and answers referred to in the assignment by number only cannot be considered on an abstract in which the questions and answers, with their numbers, are not preserved, but are condensed and presented in narrative form, so that this court is unable to locate the particular matter objected to.

5. The abstract is the record upon which a case is heard in this court, and whatever matters it is necessary for this court to know and consider must be presented by the abstract. Noyes v. Lane, (S. D.) 48 N. W. Rep. 322.

6. Where a husband takes notes, securities, or real estate in the name of his wife, that fact, alone and unexplained, raises the presumption that he intended the same as a gift or provision for her, but such presumption may be overcome by evidence which shows a motive or design on the part of the husband inconsistent with such presumed intent, and that such property was so placed in his wife's name for purposes of convenience and advantage to himself.

7. Upon an examination of the evidence in this case, this court concludes that the money, notes, and securities described in the plaintiff's complaint were put into the wife's name by the husband for purposes of advantages and convenience to himself, and not with the intention or

for the purpose of making a gift to or settlement upon her, and that the same belong to and should be distributed as a part of the estate of the deceased husband.

8. This court further concludes that as to the real estate described in said complaint the evidence is not positively inconsistent with, and does not overcome the presumption that in procuring the same to be deeded to his wife the husband intended it as a provision for her.

(Syllabus by the Court. Opinion filed July 29, 1893.

Appeal from circuit court, Hutchinson county. Hon. E. G. SMITH, Judge.

Action by Lottie Bem, Frank J. Bem, and Arthur A. Bem against Emilie Bem, impleaded with ——— Bem, and Fred Heiser, administrator of the estate of Frank Bem, deceased. Plaintiffs had judgment, and defendants appeal. Reversed.

The facts are stated in the opinion.

*G. P. Harben* and *N. J. Cramer*, for appellant.

In actions to set aside deeds absolute on their face, with no restrictions or qualifications whatever, by extraneous proof, and to declare a trust not apparent on the face of the document itself the proof must be clear and convincing. Falsken v. Harkendorf, 7 N. W. Rep. 749; Woodward v. Seibert, 82 Va. 441; Hoover v. Hoover, 19 Atl. 854; Holliday v. Sharp, 59 Am. Dec. 88; Strimppel v. Roberts, 57 Am. Dec, 606.

The deeds to the defendant raised the presumption that she was the owner of the fee and that she paid the consideration expressed in the deeds, or that the same were gifts or advancements to her from her husband, and do not raise the presumption of a resulting trust. Abbott Trial Ev. pp. 170; Gilliland v. Gilliland, 10 S. W. 139; Dudley v. Bosmuth, 51 Am. Dec. 690; Listoff v. Hart, 57 Id, 203; Dickenson v. Davis, 80 Id. 202; Smith v. Strabean, 67 Id. 622; Belford v. Crane, 84 Id. 155.

The testimony of the witness True as to statements made by Frank Bem at the time of the execution of a power of attorney to Emilie Bem many years before any of the transactions

involved in this action took place and in the absence of Emilie
Bem, was incompetent. These declarations at the best were
merely self-serving statements. 2 Best. Ev. 578; 1 Green. Ev.
Sec. 189; Abbott Trial Ev. 157; Lowery v. Erskine, 20 N. E.
588; Riddle v. Dickson, 44 Am. Dec. 207; Perry on Trust, Sec. 147;
Shultz v. McLean, 18 Pac. 775; Wilson v. Young, 8 S. E. 706;
Oliphant v. Liverside, 30 N. E. 334; Tobin v. Young, 24 N. E.
121; Spottedwood v. Weir, 66 Cal. 525; Carr v. McCarthy, 38
N. W. 241; Hausman v. Hausling, 40 Mo. App. 664; Barber v.
Burnett, 19 At. 978.

A party cannot notice the taking of two depositions at differ-
ent places at the same time. Uhle v. Bernum, 44 Fed. 729. A
deposition should be suppressed where the name of the officer
taking the deposition is not endorsed upon the envelope. Babb
v. Aldrich, 25 Pac. 558;Whittaker v. Voorhees, 15 Pac. 874;
Petzer v. Sun Fire, 15 S. E. 562; Thompson v. Clay, 27 N. W.
609; Lucas v. Richardson, 10 Pac. 183.

*R. B. Tripp*, for respondent.

By cross examining the witness True, the defendant
waived all objections to the notice of taking his deposition.
Miller v. McDonald, 13 Wis. 673.

Conceding that the notes and deeds were made to Emilie
Bem by Frank Bem, yet if Frank Bem retained possession of
the same during his lifetime and managed and controlled the
property, and no delivery of the same was made to Emilie Bem
during his lifetime, yet there would be no execution of the gift
and it would not be complete. Abb. Tr. Ev. p. 4; Jackson v.
Railroad, 88 N. Y. 520; Flanders v. Blandy, 45 O. St. 108, 12
N. E. 321; Gano v. Fisk, 43 O. St. 462, 3 N. E. 532; Beaver v.
Beaver, N. Y. 22 Id. 940; Zemmerman v. Streeper, 75 Pa. St.
147; Drew v. Hagerty, (Me.) 17 Atl. 63; Dana v. Dana, (Mass.)
28 N. E. 905; Basket v. Hassell, 107 U. S. 602; Shower v. Pilck,
4 Exc. 478; Stick v. McAvoy, 5 Moak, 711; French v. Ray-
mond, 39 Vt. 623; Cutting v. Gilman, 41 N. H. 147.

KELLAM, J.   Respondents, who were plaintiffs below, are the children of Frank Bem, deceased, by a first wife.   Appellant Emilie Bem is the second wife and is the widow of said Frank Bem, deceased.   —— Bem is their infant child.   The general purpose of the action was to have certain property, real and personal, standing in the name of and claimed by appellant as her own, adjudged and declared to be of the estate of said Bem, deceased, and subject to be distributed as such. Fred Heiser, as administrator, refusing to bring the action, it was brought by respondents, as already stated, and the administrator was made a defendant.   Upon the issues made by defendant's answer the case was referred to a referee to try all the issues therein, and report findings of fact and conclusions of law.   Upon the report of the referee, which was favorable plaintiffs, judgment was rendered by the court in accordance with the prayer of the complaint.   Motion for new trial having been overruled, the defendants appeal.

The theory of the plaintiffs was that the deceased, Frank Bem, at the time of his marriage with the defendant Emilie was possessed of some means; that Emilie had nothing, and that all the property in question was the product and growth of his judicious management of the said means of the deceased; that in the transaction of his business, which was largely that of loaning money, he had, for purposes hereafter referred to, taken notes and securities in his wife's name, and had for similar reasons taken deeds of real estate, which he bought and paid for with his own money, in the name of his wife, without any intention in fact of making her the real owner of either the real or personal property, and without that effect in law. The theory of defendant was that by and in pursuance of an antenuptial agreement Frank Bem, in consideration of her marriage to him, gave to defendant the bulk of the property then owned by him, and afterwards acted as her agent in its managment, and that the property referred to in plaintiffs' complaint was her own separate property, so made over to her

in consideration of the marriage.   During  the  progress  of  the
trial  before  the  referee,  which  the  abstract  shows  was  com-
menced June 30, 1891, upon motion of plaintiffs and upon  affi-
davits,  the  referee  granted  a  continuance  for  several  days.
This is assigned and claimed as error, though not argued.   The
statute   expressly   gives   the   referee   the   same   power   as   to
adjournments  as  a  trial  court  has.    Sec. 5,  Chap.  100,  Laws
1891.    The affidavit upon which the adjournment  was  allowed
is not presented to us, and we cannot assume that the referee's
discretion was improperly exercised.

As the chief question in the case is the sufficiency of the evi-
dence to support the findings of the referee, or any findings which
would justify the judgment rendered by the court, it is in order
first  to  examine  the  objections  interposed to certain items of
evidence, with the view of ascertaining what was properly before
the referee, and what ought to be considered by this court in de-
termining the questions presented.   Upon the hearing before the
referee  defendant  moved  to suppress the deposition of Lottie
Sexta, upon the grounds:   First, that the name  of  the  officer
taking  the  same  was  not  indorsed  upon  the  envelope  in
which the same was  inclosed;  second,  because  the  same  was
opened by the clerk without order of the court, and without the
presence of either of the  parties  or  their  attorneys;  third, be-
cause  the  notice  given  was  to take the deposition upon the
same day and hour at which the  taking  of  another  deposition
was noticed, at a place many miles distant from the place where
the first was to be taken.    The motion was overruled, and error
is assigned on such ruling.    No record is presented upon which
we can examine this question.    The motion itself is  printed  in
the abstract, but nothing more.    What the notices  show  as  to
the  time  and  place we have no legitimate means of knowing,
nor does the record show how the  deposition  was  returned,  or
under what circumstances it was opened.    We cannot assume
that the facts existed as intimated in  the  motion;  but,  in  the
absence of a showing of facts which would prove the ruling of

the referee to be wrong, it must be presumed to be correct. Defendant also moved to suppress the deposition of J. N. True for the reason that by the notice under which it was taken sufficient time was not given to get to the place where it was to be taken by the usually traveled route, with one day for preparation, as provided by Section 5280, Comp. Laws. The section referred to says in respect to the notice: "The notice shall be served so as to allow the adverse party sufficient time by the usual route of travel to attend, and one day for preparation, exclusive of Sundays and the day of service," etc. We think the record shows sufficient facts as to the time required to get to the place where the deposition was to be taken, with another day for preparation, to entitle the defendant to more time than the notice allowed; and, if the record showed no more than that the defendant appeared and objected to the taking of the deposition because the day for preparation was thus denied him, we should find difficulty in avoiding appellant's objection. Our statute, above quoted, is different from that of Wisconsin, Illinois, and Indiana, where it has been held that, although the notice allows less time than the law contemplates, still, if the noticed party is actually present, and participates in the examination, the error is not prejudicial. This is so held on the ground that under the statutes of those states the only object of the notice was to give the adverse party time and opportunity to be present, and the fact that he is present and cross-examines the witness proves that the object of the statute has been accomplished. But our statute contemplates a further purpose and effect of the notice. It not only designs to give the adverse party time to reach the place of examination, but to give him an extra day for preparation. In this case the abstract shows that when defendant objected on account of the shortness of the time given by the notice, the plaintiffs offered to postpone the examination so as to give defendant the time claimed. Failure to avail himself of this offer, without explation, we think answers any presumption of prejudice to de-

fendant, and error without prejudice is no ground for reversal.

The deposition of Frank Bem on the part of plaintiffs was objected to by defendants on the ground that he "was an heir of deceased, Frank Bem, and not competent to testify under the statutes." This objection was overruled, and such ruling is assigned as error. The assignment, however, is not considered or referred to in appellant's argument, and might, therefore, be treated as abandoned. A further reason for passing it without examination is that it nowhere appears that the witness was or is an heir of the deceased, Frank Bem. We cannot assume that Frank Bem whose deposition was taken and so objected to was the same person as Frank J. Bem, one of the plaintiffs. Being differently named,—one as Frank J. Bem and and the other as Frank Bem,—the presumption is a fair one that they are different persons.

Defendants then "objected to question 6, 9, 10," etc., but appellant does not print the deposition nor any part of it. In respondents' abstract it is said "Frank J. Bem, a witness on the part of the plaintiffs testified as follows: 'I am one of the plaintiffs,'" etc. Whether or not this is the testimony covered by the deposition we do not know. We can only say, as we said above in relation to Lottie Sexta's deposition, we cannot assume the existence of the grounds upon which error is assigned. They must affirmatively appear in the record. The motion to suppress being overruled and the deposition being offered in evidence, the defendants interposed the same objections to the questions and answers of the witness and to said deposition as were interposed by their counsel when the same was taken, and the referee ruled thereon as follows: "The referee overruled the objection to question 3½ of said deposition, to which ruling the defendants excepted." Then follows the statement in the same form that the referee overruled the objection to questions 4, 7, 11 and 29. It does not appear what were the grounds of the objection as to either question, and the deposition itself, as it appears in the abstract, is in narrative

form; no questions or answers are preserved. We can thus neither locate the matter objected to nor know the grounds of objection. Under these circumstances, we are unable to consider or examine the assignment.

The abstract in this case was evidently prepared under the erroneous notion that the court would examine the original papers, and from them supply omissions and defects in the printed abstract; but the theory of our rules is that, except in cases of dispute, the abstract is the record upon which the case is heard in this court, and that whatever matters it is necessary for this court to know and consider will be presented by the abstract. Noyes v. Lane, (S. D.) 48 N. W. Rep. 322.

This brings us to the general question of the force and effect of the evidence. Does it show Emilie Bem to be the owner either under the antinuptial agreement or as the donee of an executed gift from her husband, Frank Bem, after their marriage or does it make her a trustee only, with a resulting trust in favor of her husband, and since his decease, of his estate? The property in question was found in the name and in the possession of defendant Emilie, and, in the absence of any evidence as to how she came by it, or how she was holding it, it was presumptively hers. It first devolved upon the plaintiffs to show such facts or circumstances attending the transfer to or the possession by her as would explain and account for her possession and apparent ownership upon some other theory than that she was the real and absolute owner of the same. Lowery v. Erskine, 113 N. Y. 52, 20 N. E. Rep. 588. This was attempted by showing that at the time of the marriage of Frank Bem, deceased, to the defendant, Emiline, and for some years prior thereto, he had been in the business of loaning money for himself and others; that he had become possessed of some property; that Emiline, the wife, had nothing; that after the marriage he continued in the same business, and conducted it in the same manner, except that some time thereafter

he began to take notes and securities in the name of his wife, Emiline, but personally conducted all such business transactions, taking, holding, controlling and collecting the notes, and using and reinvesting the moneys so collected in the same manner and to the same extent as though he were the sole and undisputed owner. The direct evidence tending to sustain Emilie's claim of this personal property is that, prior to her marriage with the deceased, and in consideration thereof, the said deceased agreed to, and afterwards did, transfer to her nearly all of the property which he then owned, and that it was agreed between them that he should afterwards act as her agent in the management of such property. The evidence designed to impeach or discredit this claim that the property was transferred to her in consideration and at the time of the marriage is that no change occurred in its possession, management, or apparent ownership at the time of, or immediately subsequent to, such marriage. It remained in the possession and under the exclusive personal control of the deceased. He transacted all the business of loaning and collecting, keeping the bank accounts in his own name, giving his personal checks on account of loans so made. That during the first six months after the marriage very few loans were taken in the wife's name, but in April, 1886, as testified to by witness True, not only from conversations with the deceased, but from "circumstances that occurred at the time," there was considerable complaint in the county about excessive rates on chattel loans, and considerable talk of prosecutions for usury. That thereafter the loans were generally taken in the name of the wife, the husband charging and collecting a commission for procuring the loans. That he at that time took from her a power of attorney "to negotiate for me and in my name loans of money upon such security, real and personal or chattel, in the territory of Dakota, as he may deem proper, and upon such legal rates as he may please, not less than ten per cent in advance, exclusive of all charges and commissions accruing to him for his services and expenses in

such loans, and which said charges, expenses and commissions said attorney in fact is to collect in his own name from the borrower in each case; and I am to be released from all liability thereon." Then follows a general authorization to use any such funds or property in buying, selling, or exchanging as he may please, and upon such terms as he may choose, concluding as follows: "The power herein contained being coupled with an interest in and contractual rights in favor of said Frank Bem, it is hereby expressly understood and agreed that said power cannot be revoked or annulled by said Emiline Bem, or by any act directed by her, during the lifetime of said Frank Bem." That, besides this business of loaning, the deceased derived considerable income from making final proofs for settlers, drawing legal instruments and conveyances, and by making real estate loans on commission for loaning companies. In the absence of other facts the mere taking of an ordinary power of attorney from his wife to handle this money and collect these notes, would be more consistent with the theory that he regarded the property as hers than otherwise; but the terms of this instrument are unusual. Their object and care seem to be, not so much to create and confirm Bem's authority as an agent as to destroy and negative Mrs. Bem's authority as a principal, and to forbid her any chance to ever assert the same. If Bem's design was, as claimed by respondents, to put this property in his wife's name, only so that he might occupy the position of a third party or factor between borrower and lender, he probably would have adopted just that plan for such purpose.

In her argument appellant contends that much of the evidence of True with reference to the statements of Bem as to the reasons for making this power of attorney, and what it was intended to accomplish, was incompetent and inadmissible; but as already pointed out, there is no record presenting this question. It may be remarked, however, that the statements and declarations of Bem, as testified to by True, to which appellants

object, are not declarations made by him concerning transactions which had previously taken place, but in immediate contemplation of one then just about to occur, and in which he was the moving party. The vital question here is, with what intention did Bem, who was the acknowledged prior owner, put and keep this property in his wife's name? If we knew what he had in mind in taking this power of attorney with its unusual provisions, we should have a clue to his understanding of his relation to this property, and what he intended should finally be done with it. Up to this time very few notes had been taken in her name. Afterwards it was common. It is a fair inference that the reason was connected with the power of attorney, and what Bem understood it would accomplish. We are inclined to think, though it is not necessary to decide, that the evidence was in general competent as a part of the *res gestœ.*

Appellant contends against this conclusion, and in her printed argument states that even after the date of this power of attorney, and down to the time of Bem's death, he took a large number of notes in his own name, providing for illegal interest, and refers to "Exhibit 10," a book said to have been kept by Bem, but none of the contents or entries of this book are presented in the record, and we do not know what they are or what they prove. We, of course, can only consider the evidence which the record presents. But in the testimony in this case, plainly unobjectionable, and inferences legitimately deducible therefrom, we find enough to satisfactorily support the finding of the referee "that the said Frank Bem, at the time of his death, was the owner of all notes, mortgages, evidences of indebtedness, or other choses in action that had been taken in the name of the defendant, Emilie Bem, as payee, mortgagee, or obligee, subsequent to her said marriage, and which had not been paid at the time of the decease of the said Frank Bem." We think the effect of this evidence is also to rebut the presumption that the taking of these notes and securities in his wife's name was intended as a provision for or settlement upon

her, for it satisfactorily accounts for the fact upon a theory inconsistent with such design. Besides, it appears that these notes and the real estate in question constitute nearly the entire earnings and accumulations of the deceased; that he left three children by his former wife unprovided for if he intended to make Emilie Bem the absolute owner of all this property. In such case, to presume, without any facts showing a reason therefor, that a husband and father intended to settle his entire estate upon the wife to the exclusion of and without provision for his children, would be against paternal instincts, unnatural, and therefore unreasonable. The presumption is one of fact, and must give way before circumstances showing it to be clearly unreasonable and improbable. Adlard v. Adlard, 65 Ill. 212; Perry, Trusts, §§ 146, 147.

With reference to the real estate, we start out with the same presumption as in the case of the personal property. If a man purchase real estate, and take the title in the name of a stranger, the presumption is that he intends some benefit to himself, and a resulting trust in his favor arises; but if he take the conveyance in the name of his wife or child, the presumption of a resulting trust is rebutted, and the contrary presumption arises,—that the purchase and conveyance were intended to be an advancement to or provision for such wife or child. Pom. Eq. Jur. § 1039; Story Eq. Jur. § 1204 *et seq.;* Perry, Trusts, § 143. Respondents do not question the existence of this presumption, but contend that the same evidence which overcomes such presumption with reference to the personal property overcomes it with reference to the real estate; but, in our judgment some of the evidence which justifies the finding of the referee as to the personal property does not apply to the disposition of the real estate. The object of this inquiry is to ascertain Bem's purpose and intention in putting this property, whether personal or real, in his wife's name. The law presumes that it was intended as a gift or provision, but the presumption is not conclusive, and to the extent that a good reason is shown for his

desire and plan to make it appear to be his wife's, while it should really remain his, the force of such presumption is weakened.

We think it is not difficult to find reasons disclosed by the evidence for conducting the business of making loans and taking notes in his wife's name instead of his own. The evidence not only suggests, but tends to prove, that he adopted and relied on this plan as a means of making commissions for negotiating loans, instead of directly taking illegal interest, and incurring the consequneces. These reasons would not suggest the taking of real estate in his wife's name. The advantage to Bem in his wife's apparent ownership of the money he was loaning and the notes he was taking in clear, but no such advantage would seem to result from making his wife the ostensible owner of the real estate. If Bem had been embarrassed by debts, or had anticipated any other trouble, which he might think could be avoided by allowing the title to this real estate to go to and to be held by his wife, evidence of such facts would be entitled to consideration in determining his intention with reference to such real estate, just as such facts are considered in relation to the money and notes; but such facts and circumstances must be such as satisfactorily explain why the title was taken in the wife's name, and the whole evidence must be inconsistent with the presumption that a gift or provision was intended. 1 Perry, Trusts, § 146.

Again, while the evidence is full and convincing as to Bem's relation to the personal property, the money and notes he was loaning and taking, it is very meager as to the real estate. The notes were taken in her name, but they were never delivered to or controlled by her. They were held, managed and controlled by Bem precisely as though his own. By an irrevokable power of attorney, prepared under his direction, she relinquished to him all dominion over this kind of property, and formally and completely abdicated every right in relation to it, which is ordinarily an incident of ownership; but it is no-

ticeable that this plenary power of control and disposition does not, in terms, at all events, extend to real estate, but specifically mentions the personal property as its subject. It is true the power of attorney was executed prior to the acquisition of this, and possibly any, real estate, and it may be that mention of real estate was omitted because he did not then contemplate acquiring any; but we cannot assume this, and thus enlarge the effect of this instrument as a piece of evidence. We remember nothing in the evidence showing that Bem said or did anything in connection with this real estate inconsistent with the presumption that he intended it as a gift to his wife.

The presumption of Bem's intention, upon the admitted facts, is as good as positive evidence in the same direction, and must prevail until overcome. The evidence to countervail the presumption must be "equally satisfactory and explicit with the proof required to establish a resulting trust. The circumstances relied on must be convincing, and leave no reasonable doubt as to the intention of the party." Read v. Huff, 40 N. J. Eq, 229. In Earnest's Appeal, 106 Pa. St. 310, it is said that to establish a resulting trust in favor of the husband, who has purchased real estate and caused it to be deeded to his wife, "the evidence must be clear, explicit, and unequivocal. The rule is so well established that a citation of authorities in extenso seems unnecessary."

For reasons which we have explained more at length probably than was necessary, we conclude that the evidence presented to us by the record is sufficient to sustain the findings of the referee and the judgment of the court as to the personal property, the notes, and the evidences of indebtedness; but much of the evidence which persuades us to this conclusion is, in our judgment, peculiarly and only applicable to the personal property, and does not necessarily or naturally lead to the same result with reference to the real estate. The evidence as a whole, is insufficient to overcome the presumption that in causing this real estate to be deeded to his wife Frank Bem in-

tended it as a gift to and provision for her, and in such case the presumption prevails. The judgment is reversed and the case is remanded to the circuit court, with directions to cause to be entered judgment in accordance with these conclusions. All the judges concurring.