### BEM *et al.* v. SHOEMAKER *et al.*

1. A complaint is not demurrable, on the ground that "plaintiffs have no legal capacity to sue," unless it shows on its face that such plaintiffs are under some legal disability that would prevent them from bringing an action in their own names.

2. In such case the test is, not whether they can maintain the action they have brought, but whether they are such persons as have a right to sue in their own names.

3. Under our statute the undertaking on appeal to stay execution of the judgment appealed from does not run to any named promisee, but, *prima facie*, the promisee is the party the execution of whose judgment is so stayed.

4. In an action by heirs, the administrator refusing to bring the action, against the widow of the deceased to have adjudged and turned into the estate, as assets thereof, certain real estate and certain personal

property standing in her name, and claimed by her, the trial court found and rendered judgment in favor of plaintiffs, adjudging that all such property, both real and personal, belonged to and should be turned into the estate. The defendants appealed, and gave the statutory undertaking to stay execution. Upon such appeal this court held that the judgment was right as to the personal property, but wrong as to the real estate, and, reversing the judgment as entered, remanded the case to the circuit court with directions to enter judgment in accordance with such opinion and holding. *Held*, that this was not such an absolute reversal as discharged the undertaking, but was in legal effect an affirmance in part and a reversal in part, and that in an action on such undertaking, a complaint alleging these facts was not on account demurrable, as not stating a cause of action.

(Syllabus by the Court. Opinion filed Oct. 1, 1895.)

Appeal from circuit court, Hutchinson county. Hon. E. G, SMITH, Judge.

Action on undertaking on appeal. Defendants had judgment and plaintiffs appeal. Reversed.

The facts are stated in the opinion.

*Gamble & Dillon*, and *R. B. Tripp*, for appellant.

The statutory undertaking on appeal is not required to run to any designated person. Ins. Co. v. Park, 37 Wis. 133.

*G. P. Harben*, for respondents.

A debt due from an administrator to an estate is considered in law as having already been paid to himself as administrator, for the use of the estate, and he is compelled to account for it to the probate court. Probate L. & P. H. & D. 177; Kuster v. Peirson, 27 Ia. 90; Saroy v. Sypher, 39 Ia. 678; Muship v. Bass, 12 Mass. 198; Biglow v. Biglow, 4 O. 147; Collard v. Donaldson, 17 O. 266; Admir v. Admir, 2 O. St. 435; 2 Paige Ch. 149; Stephens v. Gaylord, 11 Mass. 265; 11 Paige Ch. 207; Brancus v. Stover, 89 N. Y. 1; Schouler on Ex. & Ad. 208. The liability of a surety on an appeal bond will not be extended by implication or construction beyond the precise terms of his undertaking. Foster v, Epps, 27 Ill. App. 235; Reiton v. Goebel, 29 N. W. 6,

KELLAM, J. This is an action on an undertaking on appeal to this court. A few explanatory words will help to an understanding of the situation. Appellants, as the heirs of Frank Bem, deceased, formerly brought an action in the circuit court, in Hutchinson county, against Emilie Bem, now Emilie Shoemaker, one of the respondents in this case, with whom was impleaded Fred Heiser, administrator of the estate of said Frank Bem, deceased, and now also one of the respondents in this case, for the purpose of having certain property, real and personal, standing in the name of and claimed by said Emilie Bem, now Shoemaker, adjudged and declared to belong to and to be a part of the estate of said Frank Bem, deceased. Heiser, administrator, refusing to bring the action, was made a defendant therein. Upon trial of this action the circuit court gave judgment for the plaintiff's, holding that all the property, described generally in the complaint, both real and personal, was property and assests of the estate, and subject to distribution as such, and requiring the said Emilie Bem to surrender the same to the administrator of the estate. From this judgment defendants appealed to this court, and to stay the execution of such judgment gave the undertaking required by statute. This undertaking was signed by the parties who are made defendants in this present action. Upon the trial of the appeal here, this court held that as to the real estate the judgment of the circuit court was wrong, but that as to the personal property it was right. The opinion which is reported in 4 S. D. 138, 55 N. W. 1102, will be more particularly noticed later. After the return of the case to the circuit court, and the entry of a new judgment therein in accordance with the opinion of this court, the plaintiffs brought this action upon the undertaking. To the complaint in this action upon such undertaking the defendants demurred, and this appeal is from an order of the circuit court sustaining such demurrer. It will be unnecessary to restate the allegations of the complaint, but its sufficiency in respect to the points of attack will be examined as we notice the grounds of the demurrer seriatim. We shall, of course, only notice the grounds argued by counsel. They

are: (1) "The plaintiffs have no legal capacity to sue; (2) the complaint fails to state facts sufficient to constitute a cause of action against them or either of them; and (3) there is a defect of parties plaintiff, as the administrator of Frank Bem should be plaintiff to recover assets," etc.

As to the first ground little need be said. There is certainly nothing on the face of the complaint showing that these plaintiffs were under any legal disability that would prevent them from bringing an action in court in their own names. Upon this ground of demurrer the question is, not whether the complaint shows the plaintiffs entitled to maintain the action which they bring, but whether the complaint shows that they personally have not legal capacity to sue. See Hudson v. Archer, 4 S. D. 128, 55 N. W. 1099, and cases there cited.

The second ground, the insufficiency of the complaint, is entitled to more attention. It is claimed that the complaint shows no cause of action in favor of these plaintiff's because—First, it shows no breach of the undertaking, that is, it does not show that the event or contingency has ever occurred upon which only the makers of the undertaking were to become liable; and second, if it did, the right of action thereon would have been in the administrator of the estate, and not in these plaintiffs. The complaint, with the exhibits, which by stipulation are to be treated as a part thereof, shows that theretofore an action had been commenced by these plaintiffs as the heirs of Bem, deceased, to compel the defendant Emilie Bem, now Shoemaker, to make over to the estate as assets thereof real and personal property which she held and claimed as her own; that Fred Heiser, the administrator of the estate, refused to bring such action, and was for that reason made a defendant therein. In that action the plaintiffs recovered judgment for all they asked, the trial court adjudging that all such property, both real and personal, belonged to the estate, and not to Emilie Bem. From this judgment the defendants, both Emilie Bem and Fred Heiser, appealed to this court. Upon such appeal, the complaint alleges, these defendants, Emilie Shoemaker, then Bem, Fred

Heiser, individually and not as administrator, and Carl Medinus, gave an undertaking whereby they undertook that the said Emily Bem would pay all costs and damages which might be awarded against her on said appeal, or a dismissal thereof, not exceeding, etc., and that if said judgment or decree so appealed from, or any part thereof, be affirmed, the said appellants would pay the amounts directed to be paid by said judgment, or the part of such amount as to which the said judgment should be affirmed, and also that if said judgment should be affirmed in whole or in part, the appellants would obey the order of the court in the premises. In consideration of the giving of this undertaking, all proceeding to enforce said judgment in favor of the plaintiffs were stayed, to await the determination of this court on said appeal. When the defendants "undertook," they promised and agreed; that is, their undertaking constituted an agreement. Who were the other parties to it? Respondents say plaintiffs are not named in the undertaking as obligees or promisees. Neither are they so named in the undertaking for costs. But suppose this appeal had been dismissed, or the judgment absolutely affirmed; would there be any doubt as to where the right of action on the undertaking for costs would lie? The right of action against the promissors would be in the other party to the promise or contract. In some of the states this security on appeal either for costs or for a stay is in the form of a bond; in others, it is an undertaking. By some statutes the security runs to the "adverse party"; by some, to the "opposite party"; by some to the "respondent," or "appelee." Our provision was taken from Wisconsin, and while no promisee is expressly named, it is clear that the purpose of the legislature was to afford a protection or benefit to the party against whom the appeal was taken. Vandyke v. Weil, 18 Wis. 277; Northwestern Mut. Life Ins. Co. v. Park Hotel Co., 37 Wis. 125. That the adverse party or respondent is the other party to the undertaking, or the party beneficially interested therein, is evident from the fact that, if he choose, he may waive the undertaking altogether. Comp. Laws, § 5218.

It is very evident that Heiser, the administrator, has throughout been hostile to the claim of plaintiffs and friendly to that of Emilie Bem, and that this was and is a controversy, not merely between plaintiffs as the heirs of Bem, deceased, and Emilie, but between the former on one side and Emilie and the administrator on the other. In this contest plaintiffs obtained judgment against these defendants, declaring certain rights in their favor. Presumably they were about to move to enforce such judgment. Defendants then propose that, if the execution of such judgment against them can be stayed, they will give an undertaking that if such judgment shall be affirmed in whole or in part, it shall be complied with to the extent that it is so affirmed. The law accepted the offer, and stayed the execution. *Prima facie*, this agreement was between the parties to that action,—between those who sought to enforce the judgment and those who sought to stay it, and accomplished the stay by giving this undertaking. But respondents say that the plaintiffs, these appellants, are not entitled to the possession of this property,—that, belonging to the estate, it should go into the hands of the administrator. That is just what the judgment of the circuit court said. Then the respondents, the makers of this undertaking, agreed and undertook that, if the execution of this judgment should be arrested, it should be complied with if, and to the extent that, this court should decide that it was right. The complaint alleges that this judgment was in part affirmed by this court, as to which we will have more to say further on, and that Emilie still refuses to comply with so much of such judgment as is affirmed. If these facts are true, somebody has a right of action on this undertaking. The matter has gone beyond the mere question of the right of possession of this property during the administration of the estate. Defendants might have stopped it there by seeing that Emilie complied with the judgment, but when she refused they became liable on this collateral undertaking, and that liability is *prima facie* to the adverse party, the party the execution of whose judgment was the consideration for the giving of it. Neither this undertaking nor the

right of action upon it are properly assets of the estate. The results may come to represent assets which equitably ought to be gathered into the estate for administration and distribution, but, if so, we apprehend the administrator will be quite as active in recovering them from these plaintiffs as from Emilie Bem. Even if we were not satisfied with this view of the situation, we should be relunctant to hold that this administrator is required to sue himself on this undertaking. In Eastman v. Wright, 6 Pick. 316, and in Pearson v. Nesbit (N. C.) 17 Am. Dec. 569, it is said that such an action at law cannot be maintained. In McElhanon v. McElhanon, 63 Ill. 457, it was held that this rule was equally operative, although the party appeared on one side in his personal and in the other in an official character. Even if this undertaking is a joint and several one, so that an action could be maintained upon it by the administrator against a part only of its makers, leaving out himself as defendant, it ought not to be done, for the security of the undertaking might be entirely inadequate without him.

Respondents further contend that they have never become liable on the undertaking, because the judgment appealed from was neither dismissed nor affirmed, in whole or in part, but was wholly reveresed. As already observed, the action was by the plaintiffs as the heirs of Frank Bem, deceased, to have certain real and personal property, held and claimed by Emily Bem, declared to be a part of and to belong to the estate. The trial court decided that the claim of the plaintiffs was right, and covered all such property into the estate. The defendants thought the judgment was wrong, and ought not to be enforced, and gave the undertaking in suit to stay such enforcement until the judgment could be reviewed by this court. The whole theory of the undertaking in such cases is that, so far as the judgment appealed from is finally declared to be right, the party in whose favor it is shall not suffer by the stay, and that so far as it is found to be right it will be complied with. The undertaking itself and the parties to it must be treated in good faith. As said in Vandyke v. Weil, 18 Wis. 280, "we are to construe the undertaking in conformity to the intention

of the act under which it was made, and with reference to which the makers must be supposed to have executed and delivered it, giving to both a fair and liberal interpretation to attain the end in view." This court held, and in its opinion, which is made a part of the complaint, said, "that the evidence presented to us by the record is sufficient to sustain the findings of the referee and the judgment of the court as to the personal property," but that it was insufficient to sustain the judgment as to the real estate, and then said, "The judgment is reversed, and the case is remanded to the circuit court, with directions to cause to be entered judgment in accordance with these conclusions." The question here is not different in substance from what it would have been if there had been two actions, one on account of the real estate and the other on account of the personal property, and the trial court had given judgment in both cases in favor of the plaintiffs, and the defendants had appealed from both judgments, and had given an undertaking in each. The appellate court sustains the judgment as to the personal property, and reverses as to the real; and this is practically and really just what this court did in this action, in which the claims for both real and personal property were combined. The claims were treated throughout as distinct and separate from each other, and there could be no misunderstanding as to its judgment in respect to each. It is said the judgment appealed from was right as to the personal property and wrong as to the real property, and because it covered both, it reversed it, with directions to the trial court to enter judgment just as it had in respect to the personal property, but for the defendants in respect to the real property. Suppose this had been a money judgment on a promissory note, and for error in the computation of interest this court had "reversed" the judgment with directions to the trial court to enter a judgment for $20 less than the judgment appealed from, could it be reasonably claimed that an undertaking like this was not available to the respondent because this court, instead of "modifying" the judgment, as it might have done, "reversed" it for the sole purpose and with specific directions that it be so mod-

ified in the court below? In Butt v. Stinger, 4 Cranch, C. C. 252, Fed. Cas. No. 2,246, the court held that "reversal for the purpose of giving a new judgment for a less sum, which is accordingly done, is an affirmance in part, and the bond covers the amount so adjudged." The evident intent and legal effect of the judgment in this case was to affirm in part and to reverse in part, as much as though it had so recited in express words. Both the trial court and the parties to the action so understood it, for upon receipt of the remittitur they at once proceeded to reenter the same judgment as before as to the personal property, in respect to which the judgment appealed from had been found to be right. To hold that this undertaking affords no security to respondent under these circumstances would be to sacrifice the substance to the merest form, and that, too, with no result but to relieve the makers of this undertaking from a liability which it was the very purpose of the law to supply, and which, with a full knowledge thereof, they voluntarily undertook, and by means of which they procured the plaintiffs to stay the execution of their judgment as to the personal property, to which they were legally entitled; while to hold the makers liable to the extent to which the judgment appealed from was right is just what the law and the contract contemplated.

As said in Trent v. Rhomberg, 66 Tex. 253, 18 S. W. 510. "The principal is not allowed to delay the execution of an erroneous judgment without securing the performance of the proper judgment to be rendered in the court to which he appeals." In Krone v. Cooper, 43 Ark. 554, defendants appealed from judgment giving damages and sustaining an attachment. The appellate court reversed as to the attachment and affirmed as to the personal judgment. The sureties were held liable on the supersedeas bond "to pay that part of the judgment which is affirmed." Authorities like these are numerous, and we do not understand respondent to question their correctness, or that they would be applicable to this case if the judgment of this court had expressly affirmed as to the personal and reversed as to the real property; but the judgment cannot fairly be made to mean anything else.

It reversed the judgment because it was too large,—that is, it included the real property, which it ought not to have included,—but in the same breath it expressly approved the judgment as to the personal property, and instead of entering such judgment here remanded the case with directions to enter it there. The difference between this judgment and a judgment affirming in part and reversing in part is a difference of words only, a distinction without a difference. The case of Thomson v. Chapman, 83 Va. 223, 2 S. E. 273, was much like this in one respect. It involved the question whether the judgment and opinion of the appellate court should be considered a reversal in *toto*, or only a reversal in part and an affirmance in part. In the concluding paragraph of its opinion (Chapman v. Shepherd, 24 Grat. 391), the court said: "This disposes of all questions arising upon the exceptions. It will be seen by them that none of them are well taken except the third in relation to the charge of compound interest. For the error in overruling that exception, this court is reluctantly compelled to reverse the decree and to remand the case for further proceedings." In its decree the court said: "The court is of opinion that under all the circumstances of the case, the estate of the said Reynolds Chapman should be charged with interest upon interest accrued only from the date of the decree rendered by the said circuit court, appealed from; and the court is further of opinion that there is no other error in the said decree of the said circuit court. Therefore it is decreed and ordered that, for the error aforesaid, the said decree of the said circuit court, so far as it is inconsistent with the foregoing principle, be reversed and annulled, and in all other respects be affirmed." The contention there, as here, was that the judgment appealed from was reversed in whole, but the court said: "The plain common sense meaning of this language is obvious. It was intended to express, and did express in terms of clear legal import, the idea that the decree below was right, and was affirmed as to everything except the charge of compound interest for the period specified. * * * This court could have, as is its frequent practice, readily corrected and affirmed the decree.

But, declining to be its commissioner, the court remanded the case for the correction to be made in the court below. Such, at least, was the simple effect of remanding the cause."

We have treated this question at unusual length largely because of two cases cited by respondent as teaching a doctrine adverse to the views we have expressed. They are Rothgerber v. Wonderly, 66 Ill. 390, and Chase v. Ries, 10 Cal. 517. The former is announced as a minority opinion, with nothing to indicate how the court divided. It is noticeable, however, that by the statutes of that state "the condition of the bond shall be for the prosecution of such appeal, and the payment of the judgment, interest, damages and costs in case the judgment is affirmed." As this case was decided in 1872, and the Revision of 1874 gives this section as having been passed in 1865, we take it that this was the law under which the undertaking was drawn, though by the opinion it does not seem to have followed the terms of the law. It makes no provision—in express terms, at least, as ours does—for an affirmance in part, and for compliance with such part of the judgment as may be affirmed. In that case, through a mere misprision of the clerk, the judgment was entered for $1,250 where it should have been $650. The judgment was of one solid sum of $1,250. The appellate court reversed it, and directed the lower court to enter judgment for $650, and held that there was no breach of the bond because the judgment appealed from was not affirmed. Whether the statute thus fixing the condition of the bond had anything to do with the decision -we do not know; but in that case it will be observed, in order to correct the error, an appeal from the entire judgment was necessary. But it was not so in this case before us. The subject of this judgment was two entirely separate and distinct items, the personal property and the real estate. The defendants might have appealed as to one and not as to the other, but they appealed as to both, and gave an undertaking that, if the judgment was affirmed as to either, such part as was so affirmed should be complied with. If the Illionis case cannot be so distinguished from this, it seems to us to stick too closely to the letter of the

contract, ignoring its spirit and intent.  The California case was
was decided in 1858, long before the adoption of the present Codes
and we have no means of knowing what their statute provided as
to the scope and condition of the bond.  The opinion is very
brief, and simply says:  "This is an action on an appeal bond ex-
ecuted by defendants, conditioned to pay the judgment appealed
from it the same should be affirmed by the appellate court.  It ap-
pears from the record that the judgment appealed from was re-
versed, with directions to the court below to enter a different
judgment.  Consequently, no liability attached to defendants un-
der the condition of the bond."  Much of what we have said of the
Illinois case is applicable to this.  The same court has since held
that a reversal as to some, and an affirmance as to other, appellants
is an affirmance "in part," so as to make the sureties liable on an
undertaking under the present law (Wood v. Orford, 56 Cal. 157);
and this, we believe, is the uniform holding in other states under
similar statutes.  We believe this undertaking, following as it does
the terms of the statute, should be so construed as to carry out the
purpose of the statute and, presumably, the intention of the par-
ties to it.  It was given to secure the performance of so much, if
any, of the judgment of the circuit court as is right and ought to
be performed.  The judgment of this court is final as to what is
right, and it does not leave in doubt what portion of such judg-
ment is approved, or, in other words, affirmed, and what is disap-
proved and reversed.  No part of the judgment and no question
in the case was to be re-examined by the circuit court.  The judg-
ment covered two distinct subjects, and the legal effect of the judg-
ment here was to require the trial court to enter a judgment sim-
ply changing its former judgment as to the real estate, but leaving
as it was its judgment as to the personal property.  That this
court, instead of making final judgment itself, as it does not often
do, sent the case back with directions to the circuit court to enter
a specific, plainly indicated judgment, ought not in our opinion, to
defeat the very object and purpose of the undertaking.  We know
nothing of the facts, but if Emilie Shoemaker has, since the ren-

dition of the judgment appealed from, used up and dissipated the personal property which the trial court, by such judgment, and this court, says did then and still does belong to the estate, but which judgment was not then enforced on account of this stay, and there is now no redress upon this undertaking, then it has served no other purpose than the accomplishment of a great wrong to these heirs, and as to them has proved a delusion and a snare. We think the demurrer ought not to have been sustained on either ground, and the order of the circuit court is reversed, and the case remanded. All the judges concur.