## BABCOCK v. ORMSBY et al.

1. Right to move the court for a new trial for errors in the report of the referee, properly excepted to, is not lost by the parties stipulating that the report be in all things accepted and adopted; the word "adopted," as so used, having the same meaning as the word "accepted," and the effect of the stipulation being merely to waive the right to question the authenticity of the report on the settlement of a bill of exceptions.

2. The authority given a referee to "decide any question which arises on the trial, sign a report or settle a case," does not relieve the trial court of the statutory duty to settle the bill of exceptions.

3. Defect in a notice to take depositions, in not naming a person whose dep-

osition was taken, is waived by the adverse party appearing and cross-examining the witness.

4. Allowing an amendment of the complaint, changing its allegation that defendant, through its agent, entered into the contract, to one that defendant itself entered into it, being to conform the allegation to the testimony, is proper, no substantial prejudice being shown.

5. Letters, one from plaintiff to defendant, reciting, "If you desire to sell these tracts, * * * give me your price, and I will see what can be done;" another, from defendant to plaintiff, "I am listing this property at $1,600. * * * I shall be glad to favor you in any way I can, and if you can work up a sale I shall be glad to allow you a commission;" another, from defendant to plaintiff, stating that the party making inquiry thought the price too high, and asking whether a lower price could be made, and what commission could be allowed; another, from defendant, stating, "I believe I should hate to see these lands go at $1,600 apiece not to me, but if you can find a buyer at that, and get your commission above it, we will try to put the deal through;" and another, from plaintiff, stating, "I have a customer for both tracts, who will take them at $1,600 a quarter section"—do not show a meeting of the minds, so as to make an enforceable contract.

(Opinion filed August 31, 1904.)

Appeal from circuit court, Grant county; Hon. J. H. Mc-Coy, Judge.

Action by Howard Babcock against A. Scott Ormsby and the Ormsby Land & Mortgage Company. Judgment for plaintiff. Defendants appeal. Reversed.

*Charles M. Stevens,* for appellants.

*L. H. Bentley* and *Howard Babcock,* for respondent.

FULLER, J. On this appeal from an order overruling a motion for a new trial in an action to enforce the specific performance of a contract to convey real property two questions of practice require attention. The cause was sent to a referee for trial of all the issues, and, his report being in all things

accepted and adopted by the court, pursuant to the stipulation of counsel for both parties, it is urged that appellants, by reason of such stipulation, are not entitled to a review of any question presented by their assignments of error. For practically every purpose of the trial, a referee appointed under our statute possesses all the powers of the court, and his report stands as a decision of the cause; but the court is the only tribunal having power to pass upon a motion for a new trial, and the right to have alleged errors considered at the hearing of such motion is not foreclosed by a stipulation that the report of the referee "be in all things accepted and adopted by the court." While the nonacceptance of the report is equivalent to the granting of a new trial, such relief may be obtained upon motion after the report has been accepted either by stipulation or otherwise, and the action of the trial court in granting or refusing a new trial is reviewable on appeal.

As employed in the stipulation of counsel, though not found in the statute relating to references, the term "adopted" has the same significance as the word "accepted," and the acceptance of the report of a referee makes it the decision of the court, and the foundation upon which a motion for a new trial may be predicated. If the report is accepted by the consent of counsel, the right to question its authenticity upon the settlement of a bill of exceptions is waived; but, if properly excepted to, alleged errors contained in such record may be insisted upon at the hearing of the motion for a new trial. The authority given by the referee to "decide any question which arises upon the trial, sign a report or settle a case" in no manner relieves the trial court of the statutory duty of settling the bill of exceptions into which the report of the referee

may be incorporated, and there is no merit in the contention of counsel for respondent that there is no bill of exceptions in this case for the reason that the same was settled by the court, and not by the referee.   The court being without power to change or modify anything done by the referee, his report is accepted as a matter of course, provided such referee was regularly appointed, and the steps taken by and before him are in substantial compliance with the statute.   Geddis v. Folliett, 16 S. D. 610, 94 N. W. 431; Neeley v. Roberts, 17 S. D. 161, 95 N. W. 921.

On the merits it is urged that no valid contract ever existed between the parties, that the trial court erred in refusing to suppress the deposition of a witness and in allowing respondent to amend his complaint during the progress of the trial.   Notice was given in the usual form, and at the proper time, that the depositions of A. Scott Ormsby, R. Ever Ormsby, C. C. Mueller, W. J. Bowden, C. F. Bliven, "and others" would be taken at Emmetsburg, Iowa, but the notice did not contain the name of W. Dick Peddie, whose deposition, with the persons above mentioned, was taken over the objection that his name did not appear in the notice, but counsel for appellant took part in the taking of such deposition and cross-examined the witness.   Although we have no statute expressly requiring the notice to state the names of the witnesses to be examined, the statute pertaining to depositions provides that sufficient time must be given to enable the adverse party to reach the designated place and have one full day for preparation, exclusive of Sundays and the day of service.   Section 515 Rev. Code Civ. Proc.   Unless the notice contains the names, there is no way by which opposing counsel can ascer-

tain what witnesses are to be sworn, and he would be greatly embarrassed, if not wholly unable, to make proper preparation for the examination. It is clearly within the spirit of the statute and entirely consistent with fairness to require the party who desires to take depositions to disclose in his notice the names of all the witnesses who will be sworn at the time and place mentioned. However, if the notice is not sufficient to authorize the taking of the deposition of a witness called, the party against whom it is to be used should refuse to take part in his examination, and at the proper time move to suppress the deposition. No notice being necessary when, by stipulation, or without objection, the testimony of a witness is taken in the presence of both parties, voluntary participation in the examination of a witness not named in the notice to take a deposition constitutes a waiver of the defect. Rogers v. Wilson, 12 Am. Dec. 61; Miller v. McDonald, 13 Wis. 673. It is held in Waldron v. City of St. Paul, 33 Minn. 87, 22 N. W. 4, that a fatal error in the notice as to the name of a witness is no ground for suppressing the deposition, where the adverse party appeared and cross-examined. Bem v. Bem, 4 S. D. 138, 55 N. W. 1102; Crenshaw v. Ins. Co., 71 Mo. App. 42; State v. Bassett, 33 N. J. Law 26; Newton v. Brown, 1 Utah 287; Hunt v. Crane, 33 Miss. 669, 69 Am. Dec. 381. According to a principle pertaining to many matters of practice, a party cannot examine a witness for the purpose of eliciting favorable testimony, and at the same time retain the right to suppress his deposition if it strengthens the cause of his adversary.

It is stated in the complaint that the Ormsby Land & Mortgage Company, by and through its authorized agent, A.

Scott Ormsby, entered into an agreement to sell the land, and, as amended, the allegation is, in effect, that the contract was entered into directly between the plaintiff and such corporation. It is commendable in the court to be liberal in allowing amendments to pleadings, when the same are in futherance of justice; and if neither surprise nor hardship results to the other litigant and the issues are not materially changed, such action is sustainable on appeal. In this instance no substantial prejudice is shown, and the amendment seems to be in conformity with the tendency of the testimony, and fairly within sound judicial discretion. The contract relied upon consists of cer tain negotiations between J. J. Batterton, as the agent of respondent, and the appellant A. Scott Ormsby, whose authority to bind the Ormsby Land & Mortgage Company is seriously questioned by counsel for appellants. These negotiations were carried on by written correspondence, and, if a contract specifically enforcable exists, its terms are contained in and must be gathered from a number of letters, the material recitals of which may be stated thus: June 10, 1901, Mr. Batterton addressed a letter to A. Scott Ormsby, Esq., Emmetsburg, Iowa, as follows: "Dear Sir: * * * If you desire to sell these tracts or either of them, kindly give me your price and I will see what can be done." Mr. Ormsby, under date of June 13th, answered as follows: "J. J. Batterton, Wilmont; S. D.: I am listing this property at $1,600. * * * I shall be glad to favor you in any way I can and if you can work up a sale I shall be glad to allow you a commission on same." July 6th Mr. Batterton writes Ormsby in part as follows: "The party that made inquiry for these lands thinks that they are both listed too high, and that about $1,200 would be nearer

right.  Kindly indicate whether or not you can make the price
any lower than $1,600 each, and also what commissions you
would allow on same. ''  So far as important, the answer dated
two days later is as follows:  ''I believe I should hate to see
these lands go at $1,600 apiece net to me, but if you can find a
buyer at that and get your commission above it we will try to
put the deal through."  Under date of July·13th Mr. Batter-
ton writes Ormsby:  ''I have a customer for both tracts who
will take them at $1,600 a quarter section. You may send deed,
abstract and any other title papers you may have to the First
National Bank of Sisseton, and the money will be ready for
you at any time.''.  The foregoing offer was promptly declined
by Mr. Ormsby, and a few days later Mr. Batterton sent Orms-
by the following letter:  ''Dear Sir:  Youis of the 19th rela-
tive to the Weihl and Steilow land is at hand.  I certainly ex-
pected that my offer sent in for this land would be accepted,
as it was for the exact amount you offered it for.  The pur-
chaser has tendered me $3,200 for this land and demands the
deed and insists upon the sale being completed.  I note the
fact that you have not succeeded in finding investments and
for that reason would prefer to hold the land; in this connec-
tion would say that my client is willing to leave the whole or
any part of the purchase price secured upon this land by mort-
gage at 6 per cent. interest.  I trust that you can see your way
clear to close this matter at the price given in your former let-
ter."  Taken altogether, the foregoing correspondence between
Mr. Batterton and Mr. Ormsby suggests studiousness on the
part of each to make their negotiations lax in terms, so that
mutuality of obligation would be lacking in case inclination to
avoid specific performance should arise from any cause.  As-

suming, without deciding, that A. Scott Ormsby had authority to bind the Ormsby Land & Mortgage Company, and that Mr. Batterton's letter of July 13th contains an unqualified proposal to purchase the property at $1,600 a quarter section, it is not consistent with former negotiations, and was never accepted by Ormsby. Where an agreement for the sale of lands consists wholly in letters, they must clearly show that the minds of the parties have met upon every material point, that the offer made by one party has been accepted by the other; and a contract, the performance of which a court will decree, must contain all the essential elements expressed in terms that are unclouded and unconditional.

The trial court erred in finding that the parties had entered into such a contract as the law requires, and the order appealed from is reversed, with the direction that a new trial be granted.