W. R. Myers, Appellant, v. R. J. Smith, Appellee.

**CONTRACTS: Requisites and Validity—Jury Question.** Whether an alleged oral contract for the cancellation of a promissory note given for the purchase of land was established by the evidence, *held* a question for the jury.

**PLEADING: Matters Specially Pleadable.** The defense of homestead right to the land in controversy must be specially pleaded, and cannot be alleged for the first time in a motion for new trial.

*Appeal from Marion District Court.*—H. S. Dugan, Judge.

February 5, 1924.

This is an action to recover the amount due upon a promissory note. The defendant set up an oral agreement for the cancellation and surrender of the note, and a counterclaim. There was a verdict for the defendant on the counterclaim. From a judgment thereon, plaintiff appeals.—*Affirmed.*

*Johnson & Teter,* for appellant.

*Norman R. Hays* and *W. H. Lyon,* for appellee.

Vermilion, J.—A statement of the facts which are established, or claimed to be established, by the evidence, and the claims of the parties, will be necessary to make plain the questions presented on this appeal.

On July 23, 1919, the plaintiff and the appellee, a tenant on the farm of the appellant, entered into a written contract for the purchase of the land, some 273 acres, at an agreed price of $220 per acre. The contract provided for the payment of $1,000 on the execution of the agreement, $5,000 on the first of March following,

and further payments not material in this controversy. Appellee failed to make payment of the $5,000 due March 1, 1920, and a further written contract was entered into, whereby it was agreed, in substance, that, if appellee paid the interest due March 1, 1921, under the original contract, the time of payment of the $5,000 would be extended to March 1, 1922, and that, in consideration of such extension of time, appellant should have a lien upon all crops grown on the farm and all property used or kept thereon, to secure the payment of the interest due March 1, 1921, and succeeding years. On October 13, 1920, the appellant's lien provided for in the last above mentioned contract was, as we understand, released, and the note in suit executed, with J. C. Collins as surety, for one year's interest, due March 1, 1921, on the contract of purchase.

Appellee by his answer admitted the execution of the note, but set up in defense an alleged oral agreement whereby appellant, in consideration of the cancellation of the contract of purchase of the farm, agreed to cancel and return all notes and claims owed by appellee to appellant in connection with the purchase of the land, and to pay appellee for improvements put upon the farm by him; and in a counterclaim he sought to recover the alleged cost of such improvements. Appellant's reply to the answer and counterclaim was a general denial.

There was testimony tending to establish the allegations of the answer and counterclaim, and to the effect that, about May 1, 1921, the appellant came to the field where appellee was working, and asked him to sign a release of the contract of purchase, and said that, if he would do so, he (appellant) would release "the contracts and everything," "release all these contracts and notes that he had signed," and pay for the improvements appellee had put on the farm; that appellant produced a paper, a contract, with appellee's signature on it, and wrote something on it which appellee signed. The testimony of appellee as to this transaction was corroborated by his farm hand, who claimed to have been present and to have heard part of the conversation.

Appellant, as a witness, denied making any agreement to cancel or surrender the note in question or to pay for the improvements. He contends, further, that any promise to cancel or surrender the note or pay for improvements, as claimed by

appellee, was without consideration. This contention is based upon the further facts that, in February preceding the conversation in the field upon which appellee relies, Collins, the surety upon the note sued on, who was cashier of the bank with which appellee did business, at the request of appellee sent to appellant, who was then in California, a telegram as follows:

"The drop in live stock and grain has left Smith about four thousand worse off than nothing. He will have to be released from the contract on the farm and have it rented to him for grain rent, or he will have to go into bankruptcy and get a new start. We believe if you can you had better come back and make some adjustment of the situation. Wire us answer promptly."

Appellant claims to have replied to this by telegram and letter to Collins, neither of which was produced on the trial, to the effect that he would take the farm back and rent it to appellee for grain rent. Appellee testified that he saw the letter, although he gave its contents somewhat differently, and that from that time on he went ahead and farmed the land, relying on appellant's agreement to rent it to him for grain rent. It is claimed that the telegram sent by Collins at appellee's request constituted an offer to surrender his contract of purchase and rent the farm for grain rent, and that the letter and telegram of appellant in reply were such an acceptance of the offer as to make, at that time, a completed contract. If such was the case, it is conceded that the oral contract claimed by appellee was without consideration.

The telegram sent by Collins to appellant, though sent at the request of appellee, was not, we think, a definite offer to release the contract of purchase and rent the farm for grain rent. It did not purport to come from appellee or to have been sent by his authority. It was from Collins, whose interest in the financial condition and prosperity of appellee, by reason of having signed his note as surety, was known to appellant. On its face, it was, at most, but a mere statement of fact to the effect that appellee was insolvent and, unless released from the contract of purchase, would have to go into bankruptcy, and the suggestion or advice that appellant come back and make some adjustment. If it had purported to come from appellee or to

have been sent by his authority, it would have been no more than an invitation for an offer. *Lowrie v. Ryland,* 65 Iowa 584; *Knight v. Cooley,* 34 Iowa 218; *Patton v. Arney,* 95 Iowa 664; *Nebraska Seed Co. v. Harsh,* 98 Neb. 89 (152 N..W. 310); *Babcock v. Ormsby,* 18 S. D. 358 (100 N. W. 759); *Talbot v. Pettigrew,* 3 Dak. 141 (13 N. W. 576).

If the telegram sent by Collins should, however, be considered as a definite offer to surrender the contract of purchase and rent the farm for grain rent, the question whether a completed contract was entered into is still open. Proof of the contents of the letter and telegram of the appellant in reply was made by the testimony of appellant, Collins, and the appellee. They do not agree. Appellee testified, on cross-examination:

"Q. Mr. Myers said in that letter that he would rent the farm to you for grain rent, didn't he? A. Yes; wanted me to stay right on the farm. Q. That he would rent it to you for grain rent and so much for the pasture? A. Yes, sir. Q. And relying on that letter, you went ahead and put in the crop in the spring of 1921? A. Yes, sir. * * * After Mr. Myers came back, we wrote up the lease, Exhibit B. This was right after he came back from California. Q. You at least talked this matter over of having received this letter and telegram from Mr. Myers with Mr. Collins, didn't you? A. Yes, we talked it over. Q. And they told you what was in the letter? A. Nothing, only they said he would lease me the place, grain rent."

Collins testified:

"Myers in those responses said he would take the place back and rent it to Smith for grain rent."

Appellant's testimony was:

"As I remember it, I told him in the telegram and in the letter that I would take the place back and rent it to Smith for grain rent, as he had asked."

The offer, assuming one to have been made, was to release the contract and rent the farm for grain rent; while the claimed acceptance, in the letter which appellee saw, was, according to him, to the effect that appellant would rent him the farm for grain rent, and so much for the pasture. To say the least, there was a conflict in the testimony as to the contents of one of the written communications relied upon as an acceptance of the

offer, and the only one which appellee saw. If it was as testi-
fied to by appellee, it was not an unqualified acceptance of the
offer as made. That the acceptance of an offer must be unquali-
fied, in order to make a binding contract, is settled. *Stennett v.
First Nat. Bank,* 112 Iowa 273; *Breen v. Mayne,* 141 Iowa 399;
*Baker v. Johnson County,* 37 Iowa 186; *Clay Bros. v. Ricketts,*
66 Iowa 362; *Foshier v. Fetzer,* 154 Iowa 147. Appellee's ver-
sion of the contents of the letter is materially supported by the
written lease of the farm, executed after the time of the alleged
oral contract relied upon by appellee. From that it appears
that, of the 273 acres of the farm, 108 acres were pasture, and
that appellee agreed to pay therefor $540, with a credit of $250,
leaving a balance of $290 to be paid January 1, 1922.

Moreover, the conduct of the parties does not indicate that
they regarded the telegrams and letter as completing a binding
contract. After appellant's return, they executed the lease re-
ferred to upon different terms from those of the claimed offer;
and appellant admits that he had a conversation with appellee
on the farm in May, when he secured the latter's copy of the
contract of purchase and, in his presence, wrote across the face
of it the word "canceled;" but, as stated, he denied promising
to surrender the note in question or to pay for the improve-
ments. He testified:

"I did not ask Smith to sign anything then. Afterwards
he gave me a quitclaim deed."

It is doubtless true that, if there was a completed contract
for the release of the contract of purchase and the renting of
the farm for grain rent, made by the telegrams and the letter, the
parties could thereafter carry it into effect by the surrender of
the written evidence of the contract and the execution of an ap-
propriate conveyance and a lease. And they could, by mutual
agreement, modify it, as they must have done by the lease, if
such a contract was made. But these facts are of importance
upon the question whether there was an offer and unqualified
acceptance, such as are necessary to constitute a completed con-
tract,—whether the minds of the parties met.

We cannot say, as a matter of law, that there was a prior
completed contract whereby appellee surrendered his rights
under the contract of purchase, and that, therefore, the parol

contract relied upon by him and as found by the jury was without consideration.

Appellant, in a motion for a new trial, raised for the first time the question that appellee had a homestead interest in the land purchased, which could only be conveyed by a joint instrument signed by himself and wife. Such a defense must be pleaded, to be available (Code Section 3629), and cannot be raised for the first time in a motion for a new trial. *In re Estate of Rule,* 178 Iowa 184.

2. PLEADING: matters specially pleadable.

It will not, perhaps, be out of place to observe in this connection that the alleged prior contract upon which appellant relies to sustain his contention of want of consideration is equally open to the same attack, and that, as we understand the record, appellee and his wife did, in fact, after the claimed oral contract, join in a quitclaim deed of the land to appellant.

It was clearly a question for the jury whether the oral contract for the surrender or cancellation of the note and payment for the improvements had been established by the evidence. The same thing is true of the question whether there was an unqualified acceptance of the claimed offer, and therefore, at that time, a release of appellee from the contract of purchase. No complaint is made of the portion of the court's charge dealing with this question.

What has been said disposes of the errors assigned and the propositions urged in argument. The judgment is—*Affirmed.*

ARTHUR, C. J., STEVENS and DE GRAFF, JJ., concur.