W. E. Foshier, Appellee, v. Wm. Fetzer et al., Appellants.

**Specific performance:** MUTUALITY OF CONTRACT. To justify a decree
1  of specific performance of a contract the minds of the parties
    must have met on all the terms of the contract, and they must
    have assented to the same things in the same sense.

**Same:** CONTRACTS: ACCEPTANCE OF OFFER: EVIDENCE. Where accept-
2  ance of an offer is relied upon as constituting a contract there
    must be an acceptance of the very conditions proposed, unaccom-
    panied by any qualifications or restrictions. In this action for
    specific performance of an alleged contract for the exchange of
    land for notes the evidence is insufficient to show a binding con-
    tract because lacking in mutuality, or to support recovery of
    damages for inability to perform.

*Appeal from Marion District Court.*—Hon. J. D. Gam-
ble, Judge.

Wednesday, February 14, 1912.

Action for the specific performance of a contract to
convey real estate. The trial court found that there was
a contract between plaintiff and defendant, William Fetzer,
but that, as defendant, Alberta Fetzer, wife of William, was
an innocent purchaser of the land from her husband, the
contract could not be specifically enforced, and, in lieu
thereof, judgment was rendered against William for the
value of the land, to wit, $5,500, with interest. Defendant
William Fetzer appeals from the judgment against him,
and plaintiff also served notice of appeal. No appearance
has been made for plaintiff in this court, and the case will
be considered only in so far as it involves defendant Wil-
liam Fetzer's appeal.—*Reversed* and *remanded.*

*Crozier & Welch* and *McNett & McNett,* for appellant.

No appearance for appellee.

DEEMER, J.—The sole question presented by the appeal, as stated by appellant's counsel, is this: "In other words, the appeal presents no controverted question of fact, and, if the court finds that the contract was made as alleged, the judgment on this appeal would be affirmed." As will presently be observed, the question is really of mixed law and fact. If there was a contract between the parties, it must be found from the correspondence which passed between them, for plaintiff is a resident of this state, and defendants are residents of the state of Ohio. This correspondence is too long to be set out in an opinion, and all we shall attempt to do will be to state conclusions with perhaps quotations from some of the letters.

Plaintiff and defendant had been close friends, and had had business relations with each other for something like 15 years prior to the time this controversy arose. It seems that, among other things, plaintiff had loaned $3,000 for the defendant upon the land now in controversy, which is called the Davis land. The borrower having failed to pay, plaintiff, at defendant's request, foreclosed a mortgage upon the land, which was given to secure the loan, and this resulted in a sheriff's deed for the land to the defendant. Plaintiff also induced defendant to make other investments, to wit, to buy $1,000 of stock in First National Bank of Harvey, and to purchase $2,000 worth of stock in what was known as the Hawkeye Portland Cement Company. Defendant also introduced plaintiff to two of his, defendant's, friends, and upon his, defendant's, recommendations and plaintiff's assurance that, if at any time they wanted their money back, he, plaintiff, would return it to them, they purchased $1,000 in stock in the cement company. As this proved a losing venture, defendant felt bound to save his friends, and he paid them $750 for their worthless stock in the cement company. Some of these

transactions are denied by plaintiff, but that defendant did make the investments claimed by him, relying upon plaintiff's friendship and judgment, if not upon his promise to hold him harmless, we have no doubt. It will thus be seen that defendant furnished plaintiff $6,000 in cash for loaning or investment, and that defendant also paid out $750 to save his friends. The investment in the cement company proved wholly worthless, and defendant's bank stock was sold to pay an assessment made by the Comptroller of the Currency. With this introduction we may now go to the letters relied upon as constituting a contract for the sale of the Davis land.

These letters refer generally to all of the dealings between the parties, and we shall not set out any more of them than the parts which refer to the land in question. October 14, 1907, defendant wrote plaintiff, and among other things, said: "Again the Davis situation with $3,000 involved, besides expenses, seems to put these conditions from bad to worse. Besides, from the deed I can't make out that there is more than seventy-eight acres in the deed, where as you have continually represented the property as having one hundred and twenty-eight acres in it. I have now, and always have had a world of confidence in your good self, and that confidence isn't shaken any up to date, but I am needing this Davis money, Will, and you have promised to see me clear in it, and I hope you will be able to do so very soon, and especially as I have waited long and patiently in the matter, and the property will be closed the coming month."

On January 10, 1908, defendant wrote plaintiff:

I am just telegraphing you to-day, 'If can realize $3,500.00 from farm, sell it.' Confirming above message, will explain that if you are able to sell the Davis farm for me so that I can realize $3,500.00 out of it and at least $1,000.00 more in cash with balance payable in not longer than three years at 7 percent, I hope you will make every

possible endeavor to sell the farm for me as certain conditions have arisen just recently here that make it necessary for me to raise every possible dollar I can, and I hope you will make a special endeavor to assist me to this end all you can. You certainly know that I would not ask you for this money unless I was crowded and had to have it, and I now am going to ask you, William, to do your level best to help me in this way. Waiting your prompt and careful attention, and early full reply, I am yours respectfully, William Fetzer.

Again, on January 20th of the same year, he wrote:

Your favor of the 14th was just received upon my return home this morning, and I am glad to know you will likely sell the Hamilton land within a day or two at $3,500.00 cash. Will explain in confidence that I have considerable here which was threatened as intended to cause me a loss unless my interests would be protected, and I have to temporarily arrange for some money on the outside in order to protect my interests. The turn that was tried could really not have been expected in any way, as it was certainly extremely unjust, and while the undertaking was not successful, yet it caused me to tie up my interests in ways that seem undesirable and unfortunate, and I am accordingly quite anxious to get them straightened out just as soon as possible. These things have been the cause of my being away, and if I could possibly have arranged the time would have come to Harvey, but on the other hand I feel every confidence in the world that you will do all you can for me anyway. I am now exceedingly anxious to get everything into cash, even though it seems more or less of a sacrifice to accomplish getting the money, and to get my affairs straightened up again. I will greatly appreciate your assistance to this end, which I feel entirely certain you will very loyally afford me at this time. With best wishes, yours respectfully, Wm. Fetzer.

On April 6th, 1908, plaintiff wrote defendant as follows:

I am just thinking I have $1,500.00 due December 15, 1908, $1,500.00 due April 1, 1909, and $500.00 due July

1, 1909, notes drawing 7 percent, given by Harvey Mercantile Co. for the building I sold them. They have $30,-000.00 stock, owe for current bills $900.00, and nothing else to anyone besides this for the building. I will indorse the notes, and if you want to use the paper how will you trade the Davis property for the notes? The company owes me $2,500.00 more, but it will not be due until December, 1909. I do not care to trade the paper off, but if you want it for the Davis property, all right. I know the notes are as good as the cash, and I just happened to think of them. If this will suit you, let me hear from you and will make the exchange. The company is making plenty of money. We control all the stores in town but one little one, and this stock will pay better than 25 percent this year. Yours truly, W. E. Foshier.

Defendant, in response to this under date of April 9th, wrote, among other things, this:

If you will promptly send me the three notes of the Harvey Mercantile Company amounting to $3,500.00, as described in your letter, so that I can duly look them over, I will likely conclude to accept them in exchange for the Davis property, as you offered to do, but the notes run for a considerable length of time ahead, and I am not entirely certain I can use them, but could give you a definite answer inside of ten days after receiving them. Such notes of course being indorsed and guaranteed by yourself as stated. Now, regarding the balance due me on collections, I would not be justified in accepting the $1,000.00 note to apply upon such collections, and besides, I am justified in expecting and demanding that you properly take care of this bank stock item for me.  .  .  .  I, of course, can not accept the $248.28 check as inclosed for the amount of collections due me, but could only accept to apply and I accordingly return check to you asking you, however, to send me check for so much of this amount in cash as it is possible for you to spare at this time, and duly make me out notes properly signed, due in sixty or ninety days, for the balance of these collections properly due me. Your very prompt attention to this matter is now greatly important, will also thank you to please forward the proposed notes of

the Harvey Mercantile Company so that the same can be duly considered promptly relative to your proposition. Yours respectfully, Wm. Fetzer.

Again, on April 17th, defendant wrote plaintiff as follows:

If I ever needed your friendship in my life it certainly is needed now, but instead of friendship that I hope to enjoy, am plain to say that you are giving me more grief and worry than nearly all my other matters put together. I have asked you to kindly send the Harvey Mercantile notes here so that I could look them over, and I am plain to say that if they were good, clean, negotiable notes upon forms that I could properly use at the banks, I will expect to promptly close the deal in exchange for the Davis land as per my understanding of your proposition. You have promised me time and again that when I absolutely needed your help and support in straightening up these matters and to get money out of them that I could rely upon your absolute loyalty and support, but you must certainly admit, William, that I am not getting such support at this time. Now, I would like to ask you the question in all friendliness and sincerity, that if you had several hundred dollars placed with a friend that you had trusted and had likewise favored, and then the time arose for your requiring his support, and instead of giving such support, his disposition seemed to be to lose sight of all past favors and promises and to absolutely do nothing in keeping with the representations depended upon in so intrusting the money for his care, I would kindly ask you would you feel pretty much disturbed under the circumstances? Now, while the immediate evidences seem to the contrary, yet I must believe that you have not hardly, in fact, turned back upon all of the things that you have agreed to do for me, and I am going to ask whether you will be at home week after next, so that I can see you in coming to Iowa, and with this help, get these matters straightened up, because it is my sincere and earnest desire to get the situation in shape at once, as now I need every dollar of my money the worst way in the world. Write me just what you will do for straightening these things up because I do not want any trouble about it if it

can possibly be avoided. Your letter admits that I intrusted you entirely and implicitly in all these things that I have gone into, and yet you say you won't do a thing until you get your own affairs in shape, which, of course, may mean a week or a month or fifty years or more, and I have been really waiting on you now for several months to my own serious inconvenience and expense. I beg to return the check sent me for several reasons: First, because while I have not stopped to check it up at this time, yet this was not a loan that I made to you at the date of buying these notes, but instead, I bought the notes and am accordingly entitled to the interest upon the notes to the date of proper payment. I am fully entitled to and must expect that you take care of this bank stock matter, because I have no earth of using it at this time and you have promised me to take care of it whenever I found it necessary to ask you to do so. You are on the ground and know the situation, and I am many hundred miles away, and if you have any sincere thought or intent of showing any real qualities of friendship, it is now your time and your devout duty to make good such representations to me. I do not want to write any more letters on the subject and you shouldn't require me to do so, but now, William, do what is right and let us stop this exceedingly unpleasant wrangling and instead, to get these things properly cleaned up. Yours respectfully, Wm. Fetzer.

Again on April 18th, defendant wrote plaintiff as follows:

I herewith return the bank stock because I am expecting you to make good your promises to me in this connection, and I can hardly believe that you will attempt to do otherwise. Yours truly, Wm. Fetzer.

P. S. I might properly add that payment of $1,000.00 cash, together with exchange, was paid by me for the stock two years ago, in June, 1906, but in closing this settlement now I will willingly grant the interest without complaint, accepting the note sent to me as being full payment of the transaction. Wm. F.

In response to this, plaintiff wrote defendant April 20th, saying in part:

I am in receipt of your favor of the 17th, returning me check for $242.75, and note what you say, and note, too, that your letter is somewhat more respectful than your former letter, which I am glad to note, and assure you I am sorry of any contention, too, when I feel like I am having it rubbed into me, and being accused and abused when I am not guilty. I will not stand for it, that is all. However, you say that this was not a loan made to me at the time you took the notes. You figure up the interest until the minute you took the notes. In figuring up the interest and sending you this check, I figured you straight twelve months' interest, and you are entitled to eleven only. However, I am sending you check herewith for all you claim, which is $20.00 more than I owe you, William, and you can not figure it any other way, but will pay it rather than have any more contention about it, and inclose you herewith check for $257.35, the amount you claim. . . . Now, regarding the Harvey Mercantile note, Will, they are on my regular forms or I can have them signed up on your forms if you like or would prefer them. It would look more like they came in the regular course of business that way. In looking the notes over I see that the date of the second fifteen hundred is May 1st, instead of April. Now you know these notes are good, William, and you would sell them $3,500.00 worth of goods in a minute. I will sell them $10,000.00 if they wanted it, and know I would get my money when it was due, if I could get them to buy it. I asked them if they would shorten up the time a little, but they didn't want to do that, but said they would put them on blanks I wanted so far as that is concerned. They are signed 'Harvey Mercantile Company, E. E. Foshier, President, H. L. McPherson, Secretary.' Now, the way I am getting shaped up, I would prefer the notes to any real estate, but make you this offer to help you out, as that will make you a good interest on your investment and I will trade the property to some one this summer. So, William, you have likely looked up the Mercantile Company, or you can take my word and indorsement as you like. They are good. If you want the $3,500.00 in notes as stated, will have them made on any blanks you like and send them to you for your deed to the Davis land, and of course, the rent contract I sent you some

days ago, and that will close the Davis deal up for you, and you can use the notes. Now, I would prefer not to do this consulting my own convenience, as I am getting rid of everything I can that will tend to hold me here, and will hope to get away some time in the future, but if it will accommodate you, all right, and be glad to do it. . . . I will also try and clean up all that Portland stock you and your friend has, too. As I understand, you will take what the face of the preferred stock is and throw in all the common, including the $5,000.00 common. Is that right? That will give you ten percent on the deal. Now, I hope I will meet your approval this time, and that it will end our letter-writing regarding these matters; and if you want the Mercantile note you can make out your deed—you and Mrs. F.—and send it here to the bank if you prefer (making it blank as to the grantee) and I will forward the notes to your satisfaction. About the bank stock, I will keep right after that until we realize on it. . . . W. E. Foshier.

On the 22d of the same month defendant answered this letter of the 20th, and we quote therefrom as follows:

Your letter of the 20th is received, and I much appreciate all your letter says. I note the Harvey Mercantile Company notes are signed by Elmer E. Foshier, president, and I certainly know that anything signed by Elmer is straight and is worth 100 percent, and especially so if indorsed by yourself. I do not think it will be necessary to rewrite the notes on other blanks from the description you mention, but if you prefer doing so I inclose herewith blanks for this purpose, being William Fetzer & Co. blanks, and should you use them, will ask you to scratch out the 'and company.' Please duly forward the notes promptly according to your offers, and if I can use them, will likewise promptly forward you a deed to the land or else expect to return them to you without any unnecessary delay. I am also willing, under the circumstances that you explain, to take your personal note due one-half each in six and nine months for the one thousand dollar bank stock to get this matter settled up and if you think the notes should be made without interest until due, I will expect to

accept them in this way for the purpose of getting the matter promptly settled up in a pleasant and friendly way, which I certainly hope to do. . . . Please understand that I will guarantee to furnish you a proper deed as coming from Mrs. Fetzer and myself for the land, should we close the deal. . . . Again thanking you for your letter of the 20th, and hoping these matters will now be promptly straightened up to our mutual wishes and satisfaction, I am very respectfully yours, William Fetzer.

On the 27th of April, plaintiff answered this letter as follows:

Now, relative to the notes of the Harvey Mercantile Company splitting them up, I did not have the least doubt in the world that it would be satisfactory to split them up in the way I proposed to you, but they have decided to put another story on part of it, and want to use the money and do not want to pay in any money this year only at their option. So I told them I would send this one in. Remember, the building is two hundred and seventy-six feet long by forty-two wide. They are making good money and will make more right along, as they have a practical monopoly on the trade here as they control the largest store here and owe nothing but what they owe on this building except $900 bills current due in May. They discount everything. Now if you can use this note I will send other good notes to make up the balance of the $3,500.00 for the land, so, if this will be satisfactory, will send you the other notes promptly making up the $3,500. If you make out the deed, Will, make the consideration blank, also the grantee, leave that blank so if I should trade it I can have the deed made direct to whoever gets it. . . . Now, again referring to the inclosed note, if you can use it, all right, do so, and if not, return to me at your earliest convenience. You know the note is good as gold. . . . W. E. Foshier.

Defendant answered this on the 29th of the same month, saying:

Your letter of the 27th is received inclosing note of $3,000.00 of the Harvey Mercantile Company, such note

being due July 1, 1909, or a year from next July. I had not understood before that this larger note of $3,000.00 was for so long a time. I note also that you are not disposed to give me any interest on these notes, and that you want to charge up the interest and give me another note for the balance, making the $3,500.00. Now, friend Foshier, you have over $6,000.00 of my money that was sent for investment and I have been needing the money most seriously indeed for the past six months and have your repeated promises that you will do anything on earth to help me out at this time if I would only wait upon you for a short time beyond November, December, January, etc., and I have waited generously and liberally, and because I am now asking you to do something properly as fulfilling such promises that I have depended upon, you do not seem to like it, and you are not properly answering my letters. . . . I certainly do not want to have any trouble with you, and have tried every way in the world to avoid it, but I must expect you to make good this bank stock to me and I need it at once, and while I have lost at least $120.00 in interest on it, yet you are welcome to this if you will settle up the $1,000 promptly. This $3,000 note I can't use because no bank in the country would loan money on a note of this amount running over a year's time, but if you could get the note divided up for me I could likely use it in this way. I have never been in such a position before, William, that I have absolutely needed your help, but I am in just this position exactly now and I have always thought that when a time of this kind came about that you would be found to be well worth 100 percent in your representations and friendship, and especially in view of the fact that this position has been brought about in depending entirely upon your representations and promises to me in making these investments. The present hour is undoubtedly a critical period in my personal history, because I need to summon every element of possible strength, financial and otherwise, in trying to control the institution I have built up and hope to be able to build a creditable and modern factory in the West, and thus carry along and make successful the business I have worked so hard and earnestly to make a creditable success. Now, I am writing you plainly the facts in a friendly spirit entirely, and in hopes

that you will come to the rescue without further delay or parleying and without more promises, but with substantial returns that I can properly use either in cash or notes to realize upon in my present undertaking, and accordingly, I am compelled to ask you what you are going to do for me at this time? This is a very serious matter to me and is accordingly certainly entitled to our very best consideration and efforts and early definite reply. Wm. Fetzer.

On May 6th, plaintiff wrote the following answer:

I am in receipt of your letter of the 29th, returning the $3,000 note of the H. M. Co. Now, I have persuaded the boys to split the notes up as we talked about and as I wrote you the first place; I herewith hand you three notes, one due December 15, 1908, $1,500, two for $1,000 each, due May 15, and July 1st, respectively, 1909. Indorsed by myself. This makes you $3,500 for the $3,000 investment. Now, I do not want this or any other land, never was a land man myself. While I think of it, will say I got a quitclaim deed from Davis and wife to you, straightening the title and the mistake of the clerk of the court in the description. I paid $16.75 for it, and I can make the clerk of the district court stand it, but do not like to sue for it for this sized claim. I never could make a dollar handling farm lands. Now if you would prefer, and can use these notes satisfactorily, send me the deed and rent contract as per yours and my former letter, and it will be satisfactory to me. Now, again, as to the bank stock and the cement stock; you jump on me rough shod again about this. If you will just keep cool for a short time, this matter will come out to your satisfaction. . . . You say I have $6,000 of yours. You know I have never profited one single cent by this investment on your part; I simply thought I was doing you a kindness. On the other hand, it has been a loss to me both in time and in cash, without any hope or desire of gain on my part; just supposed I was doing you a favor and kindness. If I was going to profit in any manner, shape or form, out of it, it would then be different. However, be that as it may, I will do my best to get your money out the quickest and shortest way, and no one will ever get me again in any such way to invest money for them. . . . But hereafter I

will look after my own interests and not seek investments for my friends in any way. $500.00 will not let me out clean in your matter, but it will cost me to try to accommodate you and make you some money, without absolutely no desire or hope of making a dollar out of it myself. And I always will feel that you have done me a wrong, but will drop it, and say if these notes are satisfactory, send me the deed; if not, return the notes, and the other matters I will get cleaned up just as fast and as quickly as I can, rest assured of that. By the way, if you do make the deed the description in the first line it is in your description, in fact, like your original mortgage, like this: Your description says '½ of the N. E. of N. E. of section 27,' and you want to leave out the ½, as it is the full 40 acres. The deed that I got from Davis corrects this to you. Now, if I was you I would keep the land, for when times open up again I think you will make some good, good money on it, and I do not want it for the reason, as I told you in a former letter, I am aiming to clean up here, and want nothing that will tie me up any. Let me hear from you as to how this meets your approval. Yours truly, W. E. Foshier.

On May 9th, defendant wrote plaintiff as follows: "Your favor of the 7th is received inclosing quitclaim deed from Geo. C. and Mary A. Davis, for which kindly attention I wish to greatly thank you. Yours respectfully, Wm. Fetzer."

On the same day defendant wrote the recorder of Marion county as follows: "Please find inclosed herewith sheriff's deed, together with quitclaim deed signed by George C. and Mary A. Davis, and likewise deed from Wm. Fetzer to Alberta B. Fetzer, his wife, all of which instruments are intended to convey the same property, but the sheriff's deed has been made out wrong and such extra expense should be really paid for by the sheriff, being wrong by reason of the error in the description of the property and besides the extra expense caused by obtaining the quitclaim deed by reason of the mistake. However, will ask you to please record these properties promptly, duly sending me

bill by early mail in inclosed stamped envelope, and I will likewise send you payment for the proper recording of these three instruments. Please do not delay in acknowledging receipt of these papers at once. Wm. Fetzer."

And on the 13th of the same month he again wrote the recorder: "I inclose Chicago check for $2.90, as covering the record fees for the recording of three deeds as previously sent you for recording and as per the charges mentioned in your letter of the 11th. Wm. Fetzer."

On May 9th defendant also wrote plaintiff the following:

In keeping with the letter as previously written to-day, I inclose herewith $2,000.00 worth of preferred Hawkeye Portland Cement stock, and $7,000.00 common Hawkeye Cement stock, which are in my own name and which I have duly signed in blank for turning over to you. You already have in your possession the $1,000 stock. Besides these I inclose $500 each preferred and common, or $1,000.00 total Hawkeye Cement stock assigned by Mr. Minton. The similar owned by Mr. Detrick, as by Mr. Minton, will expect to obtain and forward to you soon on his early return home, as I have duly promised to take up this stock for him. I will greatly appreciate your favors in this connection, as thus duly closing these matters agreeably in this way. Yours respectfully, Wm. Fetzer.

And on the same day he again wrote plaintiff the following:

Upon returning home your esteemed letter of the 6th is received, and I quite appreciate all that your letter says. . . . I note fully that you do not really care to go into the land investment and would rather keep out of it. Also that you say the bank stock and cement stock will come out all right, and we will be able to realize on them by not later than July 1st. Now, after considering the whole situation, and having in mind your prior kindly offers to make whole these stock investments at par, that we thus settle all our matters together by me accepting the $1,000.00 note previously sent to apply this note upon the collections you

are collecting for me, and then to turn over to you, besides the bank stock you now have, the following: Preferred cement stock I now hold, $2,000.00; common cement stock I now hold $7,000.00; preferred and common stock, Mr. Minton, $2,000.00; preferred and common stock, Detrick, $1,000.00. Those with the bank stock previously turned over representing a cash investment of $4,000.00, besides interest at 7 percent, amounting to over $300.00. These we will turn over to you in lieu of the land for the present notes just received amounting to $3,500; and further, such settlement will be accepted as being very satisfactory and as duly closing entirely these transactions here explained. I have taken up Mr. Minton's investment of $500.00 because he bought it on my recommendation and my personal statements to him promising to make good such investment if he went into it. I will likewise take up Mr. Dietrick's investment soon when he returns home. I wish to again thank you very much for the very satisfactory nature of your letter as just received. Wm. Fetzer.

On May 11th plaintiff answered this letter as follows:

I wrote you this morning returning the cement stock you had sent and requested the return of the Harvey Mercantile notes to the amount of $3,500. Now, the more I think of the way you handled this matter, the more aggravated I feel, and surprised you attempt to do me this way. Now, William, if you wish me to help to clean up stock and investments for you, I will do so, provided you permit me to handle them in my way, and I have always come out right in your matters, and will this time, if you will just let me alone for a little while, but I don't want to send a settlement down there for one thing, and have you send me back such matters for it. I have instructed Mr. Cunningham, of Chicago, the first stock he sold, he could sell it with the accumulated interests and arranged for him to sell your stock. There is quite a little of the stock selling at this time, the Des Moines office have placed quite a little of late also. The bank stock matter has been placed in shape that it will be realized on shortly. If our judgment should fail on this, and I do not get it cleaned up as I expect, I will take it up in the way you suggested in your letter of a few days ago (provided, however, that

this land deal is adjusted satisfactorily). I either want the deeds as you promised or the notes, and me to have nothing more to do with the land matter whatever; that is, that I am not to have any care or attention of it any farther. You seem to be afraid of the Hawkeye stock; well, you need not be for a minute. I am handing you herewith leaf from the American Banker, current number. You can see what Hawkeye is worth, and there is quite a little moving. I understand Mr. H. E. Ryan is to be the president at coming meeting of stockholders. Now, we have written and rewritten about this matter. I have said all I am going to say, now, William. If this is not satisfactory to you, we will have to adjust it some other way. I would like to get through the matter as friend, if possible, and close the matter up without any further soreness, but if we have trouble I want to get into it and over it the quickest way we can, for I think you have been very unreasonable with me in this matter. However, will say again, return the notes or the deed whereupon I will take care of the bank matter one way or the other, and the cement stock, I will get this turned for you as quickly as I possibly can, and we will clean up the matter completely and for good. Yours truly, W. E. Foshier.

On May 21st, 1908, defendant wrote plaintiff a letter, from which we extract the following:

I appreciate the kindly explanation in your letter of the 15th, regarding the very promising outlook for the Hawkeye company in connection with Mr. Ryan, of Davenport, as president, and likewise, in connection with the Des Moines investment. Now, there is no proper reason why you should feel offended or aggrieved, and if you will only kindly stop to consider my proposition, it seems certain that you will help me to the extent asked for. I am justified in saying that I have been hard pressed for money since last November, and have had to screw and twist every possible arrangement that I could get my hands on to get along, and not to squeeze or injure my friend, Foshier, who was likewise hard-pressed for money and with whom I had considerable of such money placed under his directions, arrangements and loans. Now, as to the land matter, I find I can handle this in connection with Fetzer's matters and

in a way that will get the approval of Mrs. Fetzer's uncle, Mr. W. B. Bonifield, of Ottumwa, Iowa, and I am now to the point where I have to have every available cent in the building arrangements for my new factory. I certainly am not treating you unjustly in turning over to you such stock as you today recommend as being fully worth the money invested, and which cost $4,000 besides interest, and further I am adding $5,000 worth of common stock in making the transfers to you. I think you will remember, William, when you were kind enough to come to the depot with me on my leaving Harvey the last trip I was there, and when you told me at the station you would be willing to take my cement stock at the price of the investment any day I wanted, if I would turn over to you the common stock in making the deal, and I am not only doing this, but am doing considerably better as you must know, and it is certainly true that you meant what you said, or at least I accepted your statements and offers to me in this way. Please understand that I would not hesitate to carry these things a little, if such were your wishes and if I was better situated to do so, but it has become a matter of necessity with me to now realize on all these Harvey, Iowa, stocks in the manner that I had depended upon doing from our previous understandings with these investments. I have certainly meant nothing but the kindest intentions and treatment throughout our dealings, and I have placed my money with you with the most complete confidence in your representations being fulfilled in every way in these matters, and that these present adjustments will duly close any and all differences that may have arisen in the past in our dealings together. William Fetzer.

On July 1st, plaintiff wrote defendant as follows: "Your favor of recent date at hand inclosing $500.00 preferred, and $500.00 common stock. Will say this is here subject to your order, as well as the rest you sent, and I positively will not accept this stock, and insist on deed to the land or notes returned. . . . W. E. Foshier."

This action was commenced on July 7, 1908, and on the 16th of that month plaintiff wrote the defendant a letter, from which we extract the following:

I am in receipt of your favor of the 9th in which you say you had just learned I had begun suit. This I told you I would do promptly when you refused to do as you agreed to do and I did so at that time. Now, William, this disease has such a hold on me that I know that my time is limited here and I will soon have to meet my record, and I know that I would not do either a friend or an enemy a mean or dishonest trick if I knew it. . . . Now, to the land deal, what earthly interest could I have in making and looking after this loan for you, never received a cent of it and finally when you said you wanted your money, I told you if it would favor you I had $3,500.00 in notes, would give you for a deed for this land, but did not want it, and you come right back saying four different times, 'If notes were satisfactory myself and Mrs. Fetzer will promptly execute and deliver to you deed for the land.' Now, who acted the Christian and honest man? Instead of doing so, you transfer the property out of your hands in order that I could not reach it, and send me some stocks that I never knew were in existence—that is honest, isn't it? I am perfectly willing to go into court and place our letters and testimony in evidence any place, and this much is sure, you are going to return those notes or make a deed to the land, one of the two, if it costs me $3,500.00 more to employ counsel, so we will fight it out. There was no one on earth I would have done more for. But it is now over, and it's notes, deed or fight. I want to see you come into court and make a defense. I am anxious to see what you will say. I would be perfectly willing to submit the case to your own lawyers on the record. Now, I will say to you again, you fix this matter up one way or the other and acknowledge you was in the wrong, as you know you was, then I am willing to help you any way I can, gladly. Otherwise there is no use of further correspondence. I must have the notes or the deed, nothing but what you said you would give. W. E. Foshier.

Plaintiff claims that the letters of April 6th and 22d, from which we have quoted, constitute the contract on which he relies, and that the minds of the parties met not later than April 22d, when defendant wrote plaintiff the letter of that date from which we have quoted. As will be re-

membered, the action is for specific performance, and there are no allegations in the petition which would justify a recovery for tort or for the conversion of the notes sent by plaintiff to defendant. The decree of the trial court was based upon the theory that there was a contract for the sale of the lands, or rather an exchange of the lands for the notes sent to defendant by the plaintiff, and, in order to sustain such a decree, it must be found that the parties in fact entered into a contract mutually binding upon each.

In order to have a decree for specific performance of a contract for the sale or exchange of real estate, or damages for the breach thereof, if defendant is unable to perform, plaintiff must show that the minds of the parties met upon all the terms thereof, and that nothing was left to be settled by future negotiations. In other words, in order to have specific performance, the contract sued on must have mutuality of obligation and be binding upon both parties. *Hopwood v. McCausland,* 120 Iowa, 218; *Wilkin v. Voss,* 120 Iowa, 500; *Sawyer v. Brossart,* 67 Iowa, 678.

1. SPECIFIC PERFORMANCE: mutuality of contract.

Again, it is an essential element of all contracts that the minds of the parties meet and that they assent to the same thing in the same sense; and, as some of the cases put it, at the same time. *Alsberg v. Latta,* 30 Iowa, 442; *Richmond v. Railroad Co.,* 33 Iowa, 423; *Batie v. Allison,* 77 Iowa, 313; *Coad v. Rogers,* 115 Iowa, 478; *Clay v. Ricketts,* 66 Iowa, 362.

As a rule, there can be no acceptance of an offer unless it be in the manner specified by the party making the offer. Harriman on Contracts, section 156. The rule is well stated by Mr. Bishop in his work on Contracts, enlarged edition, as follows: "If one makes to another an offer, verbal or written, direct, by letter, or by telegram, of a sort implying nothing to be done except to assent or decline, and the latter accepts it, adding no qualification, there is

2. SAME: contracts: acceptance of offer: evidence.

thus constituted a mutual consent to the same thing at the same time; in other words, a contract. And the question of the sufficiency of the transaction to work this result is of law for the court. On the other hand. . . ." Section 322. "Though there is an acceptance, if it is not to the exact thing offered, or if it is accompanied by any conditions or reservations however slight, in time or otherwise, no contract is made. It is so, for example, where new terms are introduced. They constitute an offer on the other side, and leave the question open." Section 323. "If the offer is in language not sufficiently certain for the stipulation to be enforced, or if what is written is to be construed as a mere opening of negotiations, no acceptance can transmute it into a contract." Section 324. See, as further supporting these rules, *Domestic Co. v. Tel. Co.,* 39 N. J. Eq. 160; *Mayer v. McCreery,* 119 N. Y. 434, (23 N. E. 1045); *Potter v. Hollister,* 45 N. J. Eq. 508 (18 Atl. 204); *Magee v. McManus,* 70 Cal. 553, (12 Pac. 451).

With these rules for the major premises, it is apparent, we think, that defendant at no time unqualifiedly agreed to deed plaintiff the land. True, he received the notes, but he at all times refused to agree to or accept plaintiff's offer. He did not return the notes, but undertook to hold them in satisfaction or part satisfaction of the indebtedness which plaintiff owed him. This did not of itself make a contract. Plaintiff does not charge fraud or that defendant should be estopped from denying an acceptance of his offer by reason of his conduct. He plants himself squarely upon the proposition that the letters which we have quoted show a contract or agreement to convey the land. To our minds they fail to show that meeting of the minds which is essential to the maintenance of such an action as was here brought. We regret having had no argument for appellee. Because of that fact, we have examined the record with unusual care to see if there was any contract between the parties, and, in order that our position may not be misunder-

stood, have copied extensively from the record all the correspondence which passed between the parties which is embodied in the abstract. We do not mean to hold that plaintiff has no relief against the defendant. He, defendant, is evidently holding the notes sent him by reason of his claim that plaintiff is largely indebted to him, and not because of any agreement on his part to convey to plaintiff the lands in controversy. He may be liable in tort or conversion for the value of the notes; but he is not entitled to specific performance or to a judgment for breach of the contract alleged. As already suggested, no fraud is pleaded, and no claim made that defendant secured the notes by fraud, or that he induced plaintiff to part with them by reason of a fraudulent scheme. We have no occasion to consider, then, whether in equity plaintiff might not have damages on the theory that this fraud estopped defendant from claiming there was no contract. Into that field we shall not enter, first, because there is no pleading tendering such an issue; second, because no argument is made to sustain any such contention; and, third, because the trial court did not enter its decree on any such basis.

We think the trial court was in error in rendering its judgment for plaintiff, and the decree must be reversed and the cause remanded for one in harmony with this opinion, without prejudice to plaintiff's rights to proceed at law if he be so advised.—*Reversed* and *remanded*.