**IN THE COURT OF APPEALS OF IOWA**

No. 13-2026
Filed December 24, 2014

**GARY LENZ and ADVANCE DESIGNS, INC.,**
    Plaintiffs-Appellants,

**vs.**

**HEIAR FENCING & SUPPLY, INC.,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Dubuque County, Monica L. Ackley, Judge.

Gary Lenz and Advance Designs, Inc. appeal the district court's dismissal of their claim for breach of an oral contract. **AFFIRMED.**

Jeffrey R. Tronvold and Matt J. Reilly of Eells & Tronvold Law Offices, P.L.C., Cedar Rapids, for appellants.

Robert L. Sudmeier of Fuerste, Carew, Juergens & Sudmeier, P.C., Dubuque, for appellee.

Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**DOYLE, J.**

This appeal involves a customer who is unhappy with the fence posts originally installed on his farm in the 1990's by Heiar Fencing & Supply, Inc. The customer, Gary Lenz, and his business, Advance Designs, Inc. (hereinafter collectively "Lenz"), sued Heiar Fencing & Supply for breach of an oral contract, alleging Lenz and the owner of the fencing company, Doug Heiar (hereinafter collectively "Heiar"), orally agreed Heiar would replace defective posts in lieu of Lenz suing Heiar.

The matter proceeded to trial, and, after the plaintiffs rested their case, the fencing company moved for a directed verdict, arguing the evidence presented by the plaintiffs was insufficient to support an oral agreement. The district court agreed, and it directed a verdict in favor of the fencing company and dismissed the plaintiffs' petition. The plaintiffs challenge the court's ruling. On our review, we agree the evidence presented by the plaintiffs was insufficient to support an oral agreement. We therefore affirm the district court's ruling.

### I.  *Scope and Standards of Review.*

"A directed verdict is required only if there was no substantial evidence to support the elements of the plaintiff's claim." *Pavone v. Kirke*, 801 N.W.2d 477, 487 (Iowa 2011) (citations and quotation marks omitted). Thus, "[a] motion for directed verdict must be overruled if substantial evidence supports each element of each claim." *Fry v. Blauvelt*, 818 N.W.2d 123, 134 (Iowa 2012). "Evidence is substantial when reasonable minds would accept the evidence as adequate to reach the same findings. Where reasonable minds could differ on an issue, a

directed verdict is improper and the case must go to the jury." *Pavone*, 801 N.W.2d at 487 (internal citations, alterations, and quotation marks omitted).

Our task on appeal is to determine whether the district court correctly determined there was insufficient evidence to submit the issue to the jury, and we review the court's ruling for the correction of errors of law. *See Fry*, 818 N.W.2d at 134. "We review the evidence in the light most favorable to the nonmoving party, taking into consideration all reasonable inferences that could fairly be made by the jury, regardless of whether the evidence is contradicted." *Dorshkind v. Oak Park Place of Dubuque II, L.L.C.*, 835 N.W.2d 293, 300 (Iowa 2013); *see also* Iowa R. App. P. 6.904(3)(b).

## II. *Background Facts and Proceedings*.

Viewing the evidence in the light most favorable to Lenz, we find the following relevant facts. In 1994, Lenz bought farm property and he decided to raise buffalo there. Approximately a year later, Lenz hired Heiar to install fencing to enclose his buffalo. Heiar informed Lenz of a new type of post that was coated with vegetable oil that was "outliving creosote posts" and were "a little more cheaper" than the creosote posts. Lenz agreed to go with these type of posts, and they were installed incrementally by Heiar. Lenz paid Heiar cash for the posts in an amount "over fifty and upwards of a hundred thousand" dollars.

Within that first year, the posts began to rot and Lenz contacted Heiar about the problem. Heiar acknowledged the posts looked "like they're going rotten." Heiar "admitted [the posts] were going bad," and he told Lenz the post manufacturer had gone bankrupt and went out of business. Lenz and Heiar talked about the failing posts, and Lenz told Heiar:

> [T]hose posts have got to be taken care of. What are we going to do about that? And don't yank them, just to go back and replace them at all. When something gets bad, you have to get down and take care of it, as soon as I phone you, which he did at first right away.

When asked if Heiar agreed with Lenz after Lenz said that to him, Lenz testified: "Well, [Heiar] kept coming back, so I assume he agreed with it." Based on that conversation and knowing Heiar was "young in business" and "something like this could break [someone] right at the beginning," Lenz made the decision not to sue Heiar at that time. Lenz gave Heiar the option to "come and replace a lot of posts" but did not require they replace them "all at once."

Heiar starting coming to Lenz's farm and replacing failed posts at no cost. The "first years," Heiar replaced them within a couple of days after Lenz contacted him. As the years progressed and Heiar "was getting bigger and bigger," Heiar "wasn't coming back and fixing" Lenz's repairs. By approximately 2010, Heiar stopped coming out to Lenz's farm. In 2011, Lenz hired Kevin Noonan to replace fence posts that were bad, and Lenz decided to put in an all new fence because the cost was the same as repairing and replacing the bad posts.

In 2012, Lenz filed his petition at law asserting Heiar breached an oral contract between the parties. His petition alleged that the parties agreed Lenz would forgo litigation against Heiar "provided that [Heiar] would replace posts as they failed without charge." The petition stated that Heiar replaced posts over the years, but in 2010, Heiar refused to continue to replace the posts without cost, breaching the settlement agreement.

The matter proceeded to trial, and Lenz testified as to the facts set out above. Noonan, who replaced Lenz's fence in 2011 testified in Lenz's case-in-chief. Noonan testified wood fences by their nature will probably fail over time, and the life expectancy one could hope to have on the wood fence is anywhere from fifteen to twenty-five years. When he was replacing Lenz's fence, approximately seventy-five percent of the old posts were broken or had rotted off. He testified the posts were sixteen to eighteen years old, and the remaining percentage of old posts "still had some life to them." Noonan testified he replaced almost five hundred old posts.

After Lenz rested his case, Heiar moved for a directed verdict on numerous grounds, including that there was no evidence of any oral agreement between Lenz and Heiar. Lenz resisted. Thereafter, the district court granted Heiar's motion, directing a verdict in favor of Heiar and dismissing Lenz's petition. Among other things, the court found "there was no evidence to support an oral agreement."

Lenz now appeals.[1]

### *III. Discussion.*

In order to succeed in a claim for breach of contract, the plaintiff must first prove the existence of a contract. *Iowa Mortg. Ctr., L.L.C. v. Baccam*, 841 N.W.2d 107, 111 (Iowa 2013). "[P]roof of a claimed oral contract must come from more than "loose and random conversations." *Passehl v. Passehl*, 712

---

[1] At the risk of sounding like a broken record, we once again note an all-too-frequently-observed violation of the rules of appellate procedure: failure to place a witness's name at the top of each appendix page where that witness's testimony appears. *See* Iowa R. App. P. 6.905(7)(c).

N.W.2d 408, 417 (Iowa 2006) (citation omitted). Rather, for a contract to be valid, the parties must express mutual assent to the terms of the contract.[2] *Schaer v. Webster Cnty.*, 644 N.W.2d 327, 338 (Iowa 2002). Mutual assent is present when it is clear from the objective evidence that there has been a meeting of the minds. *Id.* To meet this standard, the contract terms must be sufficiently definite for the court to determine the duty of each party and the conditions of performance. *See Seastrom v. Farm Bureau Life Ins. Co.*, 601 N.W.2d 339, 346 (Iowa 1999).

"[A]ssent usually is given through the offer and acceptance." *Kristerin Dev. Co. v. Granson Inv.*, 394 N.W.2d 325, 331 (Iowa 1986). "An offer is a 'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" *Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 285 (Iowa 1995) (quoting Restatement (Second) of Contracts § 24, at 71 (1981)). "[W]e look for terms with precise meaning that provide certainty of performance." *Id.* "If an offer is indefinite, there is no intent to be bound." *Heartland Express, Inc. v. Terry*, 631 N.W.2d 260, 268 (Iowa 2001) (citation and quotation marks omitted). Additionally, "the acceptance must conform strictly to the offer in all its conditions, without any deviation or condition whatever." *Shell Oil Co. v. Kelinson*, 158 N.W.2d 724, 728 (Iowa 1968). Otherwise, there is no mutual assent and therefore no contract. *Id.*

---

[2] We note that the same general principles of contract law apply to the creation and interpretation of settlement agreements, which are "essentially contracts." *Sierra Club v. Wayne Weber LLC*, 689 N.W.2d 696, 702 (Iowa 2004). Consequently, it matters not whether we use the term "contract" or "settlement agreement" in this instance.

Here, viewing the evidence in the light most favorable to Lenz and affording him every legitimate inference that reasonably may be deduced from the evidence, we agree with trial court's conclusion that the record does not contain substantial evidence from which the jury reasonably could have found the existence of an oral agreement. The terms of the alleged contract are not "sufficiently definite" in any way to determine what Heiar's duty was and the required conditions of his performance. Lenz's own testimony was that he made a statement to Heiar and assumed Heiar agreed because Heiar kept coming back. This does not evidence a meeting of the minds that Heiar would continue in perpetuity to replace, for free, fence posts he installed almost twenty-years ago. We agree with the district court that there was no evidence of any agreement from which a jury question as to the existence of an oral agreement could be engendered. Accordingly, we affirm the district court's ruling directing a verdict in Heiar's favor and dismissing Lenz's petition.

**AFFIRMED.**